MONAGHAN, MONAGHAN, LAMB & MARCHISIO, LLP
28 West Grand Avenue
Montvale, New Jersey 07656
(201) 802-9060 PHONE/(201) 802-9066 FAX
Attorneys for Plaintiffs

RECEIVED-CLERK
U.S. DISTRICT COURT

2007 JUN 15  P 2: 36

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN J. CAFARO, HAROLD COOK, JAMES GIACOPASI, LINDA NUCKEL, WILLIAM STRAUSS, ESTATE OF DOROTHY R. STRAUSS, DANIEL MORLEY, | **COMPLAINT** **AND JURY DEMAND** DOCKET NO. |
| PLAINTIFFS, | **CIVIL ACTION** |
| v. | |
| HMC INTERNATIONAL, LLC, ROBERT M. MASSIMI, BRET A. GREBOW, JAIME L. MASSIMI f/k/a JAIME ELLIOTT, JAMIE S. MASSIMI, GREGORY MASSIMI, BRUNO DIBELLO & CO, LLC, ESSEX-MORGAN, LLC, AND SCHONFELD SECURITIES, LLC F/K/A BROADWAY TRADING AND JOHN DOES 1-10, | |
| DEFENDANTS. | |

## **COMPLAINT**

Plaintiffs by their attorneys, Monaghan, Monaghan, Lamb & Marchisio, LLP, for their Complaint herein against the Defendants allege upon knowledge, or upon information and belief[1] where appropriate, as follows:

## INTRODUCTION AND FACTUAL BACKGROUND

1. This case involves a fraud in connection with a day-trading hedge fund named HMC International L.L.C., ("HMC", and sometimes referred to as the "Fund") which was nothing more than a classic Ponzi scheme, operated by certain of the named defendants, who both individually and jointly, directly and indirectly, engaged in acts, practices and in a common course of conduct, designed to defraud Plaintiffs by the use of deceptive practices and by misrepresenting and omitting material facts in connection with the investments made by Plaintiffs therein. Other defendants materially aided and abetted the wrongful conduct or, as a result of transfers that were fraudulent and intended to defeat creditors' claims, received from HMC or from the defendants directly, proceeds of the Plaintiffs' investments for little or no consideration.

2. The HMC investors including Plaintiffs invested an aggregate of $12,900,000.00, which after redemptions and other

---

[1] The facts alleged herein rely in part upon the Securities and Exchange Commission's ("SEC") pleadings in the case brought against certain of the named defendants under 05 CIV. 10673 U.S.D.C. S.D.N.Y. [This action sometimes referred to as "SEC Action"].

2

withdrawals by investors of approximately $5.4 million and the collapse of the HMC hedge fund left a net loss of approximately $7.5 million dollars due to sham investments and looting of the Fund's assets for the personal benefit of the Fund's principals.

## JURISDICTION - VENUE

3.   Jurisdiction and venue in this action are predicated upon Sections 12 and 22(a) *et seq.* of the Securities Act of 1933; 15 U.S.C. §§ 77q(a) & 77v(a);  Section 10(b), 20, and Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b); (78t)(a), (78t-1),   Rule 10b-5 thereunder, 17 C.F.R.§ 240.10b-5, and the Rules promulgated thereunder; and 28 U.S.C. Sections 1331 and 1337 and the pendent jurisdiction of this Court relating to New Jersey and New York State securities law claims, Common law claims and consumer fraud claims are asserted under both the New York General Business Law (Sec. 349 and 359 *inter alia*) and New Jersey statutes (N.J.S.A. 56:12-1 *et seq.*) which provide for attorney's fees and exemplary damages in appropriate situations.

4.   *In personam* jurisdiction in this action is also predicated upon business activities and transactions conducted within  the  District  of  New  Jersey.    The  means  and instrumentalities of interstate commerce were used and employed in connection with the wrongful conduct hereinafter alleged.

3

5. Venue is proper in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this District.

## RELIEF SOUGHT

6. This action seeks money damages, punitive and exemplary damages, attorney's fees, injunctive relief, rescission of any transactions found to be fraudulent conveyances and also seeks pre-judgment relief by way of attachment of the assets of certain defendants for among other reasons security for any relief and judgment which will be ultimately rendered in this matter and for purposes of rescinding any transactions found by the Court to be fraudulent conveyances for less than fair consideration.

## PARTIES

## PLAINTIFFS

7. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 6 as if set forth verbatim herein.

4

8. Plaintiff JAMES GIACOPASI ("GIACOPASI") is a citizen and resident of the State of New York with an address of 15 Sylvan Drive, Mahopac, New York 10541. He invested and has lost not less than $87,068.00 in one account at HMC.

9. Plaintiff LINDA NUCKEL ("NUCKEL") is a citizen and resident of the State of New Jersey with an address of 107 E. Saddle River Road, Saddle River, New Jersey 07458. She invested and has lost not less than $24,015.24 in one account at HMC.

10. Plaintiff HAROLD COOK ("COOK") is a citizen and resident of the State of New Jersey with an address of 886 Belmont Avenue, North Haledon, New Jersey 07508. He invested and has lost not less than $100,000.00 in two accounts at HMC.

11. Plaintiff WILLIAM STRAUSS ("W. STRAUSS") is a citizen and resident of the State of New Jersey with an address of 8 Heather Court, Upper Saddle River, New Jersey 07458. He invested and has lost not less than $250,000.00 in one account at HMC.

12. Plaintiff ESTATE OF DOROTHY R. STRAUSS ("D. STRAUSS"), Executor WILLIAM STRAUSS is a citizen and resident of the State of New Jersey with an address of 8 Heather Lane, Upper Saddle River, New Jersey 07458. The Estate invested and has lost not less than $330,000.00 in one account at HMC.

13. Plaintiff DANIEL MORLEY ("MORLEY") is a citizen and resident of the State of New Jersey with an address of 33 Surrey

5

Lane, Mahwah, New Jersey 07430. He invested and has lost not less than $50,000.00 in one account at HMC.

14. Plaintiff JOHN J. CAFARO ("CAFARO") is a citizen and resident of the State of New Jersey with an address of 23 Deer Chase Road, Morristown, New Jersey 07960. He invested and has lost not less than $220,000.00 in one account at HMC.

## DEFENDANTS

15. Defendant HMC International, LLC ("HMC") is or was a New Jersey corporation with its principal place of business located at 50 Chestnut Ridge Road, Montvale, New Jersey 07645. The HMC fund was originally based in Paramus, NJ but later moved to Manhattan in New York City and still later in May of 2004, the Fund moved to Montvale, NJ. Defendant HMC was operated and controlled by Defendants ROBERT M. MASSIMI and BRET A. GREBOW who were the Funds' designated "members" [HMC, ROBERT M. MASSIMI, BRET GREBOW and ESSEX-MORGAN LLC may sometimes be referred to collectively as the "**HMC Defendants**"].

16. Defendant ROBERT M. MASSIMI ("MASSIMI") is a citizen and resident of the State of New Jersey residing at 110 East Allendale Road, Saddle River, New Jersey 07458. As set forth later herein, Robert Massimi operated and used the monies and funds invested in HMC as though they were his personal funds;

6

made excessive withdrawals of corporate monies for his own personal use and HMC and his financial affairs were so intermingled and monies co-mingled that Robert Massimi was the alter ego of HMC responsible for its debts, contracts and obligations as though he were personally and individually a party to each such obligation. The SEC's Action (see Footnote 1), brought under statutes cited in this Complaint, resulted in Judgments, dated January 16, 2007, against Massimi in which he consented to and admitted he "… [was] liable for disgorgement of $1,266,168 representing profits gained *as a result of the conduct alleged in the Complaint…*" [Doc. No. 68 and 69, 05-CV-10673 [DC] in S.D.N.Y.]. Upon information and belief, Massimi did disgorge the funds described above. Similarly, Grebow consented to Judgment likewise admitting responsibility, liability and agreeing to a disgorgement of over $3,000,000.00—none of which was been paid.

17. Upon information and belief, Defendant BRET A. GREBOW ("GREBOW") is thirty years of age and believed to be a citizen and resident of the State of New York living in New Rochelle, New York at the present time. GREBOW is or was a registered representative holding a Series 7 License from the National Association of Securities Dealers ["NASD"] a self-regulating organization authorized by statute and regulations to monitor

the activities of member firms and representatives for the protection of the public.

18.    Defendant JAIME L. MASSIMI a/k/a JAIME ELLIOTT ("ELLIOTT") is a citizen and resident of the State of New Jersey residing at 110 East Allendale Road, Saddle River, New Jersey 07458. Elliott is or was married to MASSIMI and was in joint title with him, but upon information and belief is now the sole titled owner of the above premises located in Saddle River, New Jersey as a result of a transfer in or about October, 2005 for little or no consideration and intended to defeat creditors.

19.    Defendant JAMIE S. MASSIMI ("Jamie") is the former wife of defendant MASSIMI and was the transferee of MASSIMI's interests in real property located in New Jersey.    These properties included 28 Holly Road, Upper Saddle River, New Jersey which was transferred to her on August 11, 2005 for a stated consideration of less than $1.00 at a time when MASSIMI was transferring assets to avoid claims and creditors including the Plaintiffs.    In November of 2005, MASSIMI transferred his ownership interest in 74 Twilight Road, Bayhead, New Jersey to his former wife Jamie [as opposed to Jaime-his current wife] also for a stated consideration of less that $1.00 and also to defeat or hinder creditors such as the Plaintiffs.

8

20.    Upon information and belief, Relief Defendant GREGORY
MASSIMI, a relative of ROBERT MASSIMI, residing in New York
invested an indeterminate sum and withdrew $613,053.87, from the
HMC fund, $513,053.87 of which was withdrawn in 2005.    Gregory
Massimi did not, in fact, have those funds in a designated
account because Robert Massimi, Gregory Massimi's brother, was
running a Ponzi scheme using other investors' funds to cover
withdrawals.    The timing of Gregory's withdrawals, when the SEC
and investors were bearing down on HMC, is highly suspicious and
evidence of a fraudulent conveyance.

21.    Defendant BRUNO DIBELLO & CO, LLC ("BD&C") is a New
Jersey corporation, licensed to practice as accountants in the
State of New Jersey, with its principal place of business at 785
Totowa Road, Totowa, New Jersey 07512. BD&C provided accounting
services including tax returns and K-1 forms for the investors
in HMC and preformed services for MASSIMI directly and also
issued reports in connection with their work for HMC which
reports were furnished to investors with the  full knowledge of
BD & C that investors such as the Plaintiffs would rely upon
them and give them credence.

22.  Defendant ESSEX-MORGAN LLC, was another hedge fund
operated by Robert M. MASSIMI, in New York, N.Y. into which at
least $700,000 had been transferred from HMC with an account

9

balance of just under $200,000 at the end of 2004. Robert MASSIMI eventually discontinued its operations and transferred all remaining assets to HMC.

23. Defendant SCHONFELD SECURITIES, LLC ("SCHONFELD") f/k/a Broadway Trading is upon information and belief an NASD registered Firm has or had a place of business at 280 Park Avenue, New York, New York 10017. SCHONFELD provided brokerage clearing services for the defendants in the years 2004 and 2005.

## SUBSTANTIVE FACT ALLEGATIONS

### A. THE FUND SET-UP AND FRAUD *AB INITIO*

24. The HMC "hedge" fund was established in 2002 by MASSIMI and GREBOW. Its investment style as touted to the Plaintiffs was claimed to be investing in a limited group of securities with a "day trading strategy" in which all positions would be liquidated and withdrawn from the market every evening. This fictitious strategy supposedly avoided or hedged against, after-hours risks. This "hedge" coupled with trading in select equities allegedly balanced the risks of day trading.

### B. INVESTMENTS IN HMC

25. After direct or indirect solicitation by the defendants, approximately eighty (80) investors [which included the Plaintiffs] relied upon materially false representations as

10

set forth hereafter and those on a Website established by MASSIMI and GREBOW and invested and entrusted approximately $12.9 million dollars in HMC starting in or about 2002. Each of the investors invested funds with HMC pursuant to an agreement containing the following clause which, among other consequences, rendered Robert Massimi and Bret Grebow personally liable for their negligence, malfeasance and bad faith:

> 5.    **Liability.**    HMC and its members, managers, and employees shall not be liable for any loss arising out of any act or omission*, **unless arising out of their negligence, malfeasance, misfeasance or bad faith.*** Any stated limitations on liability shall not relieve HMC from any responsibility or liability HMC may have under state or federal law.

These funds were in the nature of trust funds to be used and applied by the Fund for the benefit of the Plaintiffs and the other investors. However, as demonstrated below, through the negligence, malfeasance, misfeasance and bad faith of the principals of HMC, Plaintiffs' funds were mishandled and used to pay commissions, personal expenses, personal debts and distributions to new investors.

## C.   AFFIRMATIVE MISREPRESENTATIONS AND BY OMISSION

26.    Investors including the Plaintiffs were led to believe by MASSIMI and GREBOW and HMC through oral and written public and private statements that the HMC Fund had expert and honest

11

traders and investment strategies which would avoid the risks of trading losses and that actual trading to accomplish the objective of generating profits would occur and that the funds entrusted to the HMC defendants would be professionally and legally managed by defendants. Further investors including the Plaintiffs were led to believe that the trading and investment activities of HMC Fund were conducted and monitored in a professional and businesslike manner. Among the false and fraudulent statements were puffed and exaggerated claims designed to mislead, many of which were reported in self-aggrandizing news articles planted or encouraged by the HMC defendants. Examples of these include the following:

a) In a Wall Street Journal article entitled "With The Market Up Wall Street High Life Bounces Back Too — Chartered Jets, A Wedding in Versailles and Fast Cars to Help Forget Bad Times", GREBOW misrepresented to the world the nature of HMC's business and its success. He represented that he was able now with the success of his company to treat himself to a new Lamborghini and that he no longer had to take cheap flights on Jet Blue Airways but instead could charter his own flights.

b) In order to solicit investors, MASSIMI used his position to misrepresent the nature of risk involved with HMC, the investment strategy, his performance and his role as supervisor. MASSIMI accomplished this through spoken word, media interviews for various Wall Street publications, and HMC's website.

c) He professed that the fund's traders were mathematicians who used trading strategies based on an incredible amount of technical research, which was untrue. The only person who in fact ever did any

12

trading at all was GREBOW. Incidentally, GREBOW was neither a mathematician nor a college graduate.

d) MASSIMI's repetition of these low risk representations were also made in newsletters which he sent to investors. The purpose of all of these representations was to mislead investors into thinking that HMC was a bona fide hedge fund operated by professionals and that their money would safely appreciate in value.

e) MASSIMI also published false and misleading annual performance returns for the years 2001 through 2004 on HMC's website. These included reports of a 68% return for 2001, a 70% return for 2002 and a 30% return for 2003 and 2004, all of which were total falsehoods.

f) MASSIMI made other misrepresentations including assuring investors that he was supervising GREBOW's trading, when in fact he wasn't. He also told investors that the fund had between $20 million to $25 million dollars of assets under management while in fact it had much less, never having taken in more than $12.9 million.

g) GREBOW also misrepresented the funds performance to investors and confirmed to them the status of the firms' active trading and profitability, and reported fictitious returns.

h) GREBOW additionally misrepresented the funds performance in the February 2004 Wall Street Journal article claiming that returns in 2003 were 40% when in fact they were in the negative.

i) In April 2005 MASSIMI arranged for two new articles to be published in the Wall Street Transcript and Buy Side Magazine. MASSIMI used this opportunity to inflate the performance of HMC in the hopes of attracting more investors. This sort of activity follows the classic Ponzi format in which new investor money is acquired in the hopes of placating old investors so that the scam can continue.

j) GREBOW manufactured and fabricated trading account statements for HMC which he sent to MASSIMI who in

13

turn prepared monthly statements for investors, which showed these false monthly gains.

### D. GREBOW'S CHECKERED AND CRIMINAL PAST

27.  The official record of the NASD reveals that GREBOW, over a relatively short period of time, while in his twenties and lacking a college degree, had been an employee and associated with seven or more brokerage and investment firms beginning in 1995. Over his short career he moved from firm to firm; and in several instances customer complaints were lodged against him alleging conversion.

28.  Most significantly, GREBOW was charged with a felony possession of a forged instrument, which charge was downgraded to disorderly conduct.  All of these wrongs were actions showing a lack of fidelity and trustworthiness, qualities particularly necessary when dealing with other peoples' money in a fiduciary relationship.

29.  MASSIMI knew or should have known about GREBOW's checkered past and nonetheless sought to and did align himself with GREBOW.

### E. THE SHORT LIFE AND COLLAPSE OF THE HMC FUND

30.  Although the Fund was supposed to trade actively and generate profits for the investors, as represented by MASSIMI

and GREBOW, according to the SEC and its investigation, there was little or no trading and likewise little or no profit to distribute. The defendants MASSIMI and GREBOW enticed new investors to place funds with them and used those fresh funds to pay themselves and to pay some redemptions and so-called "profits" to investors lulling them into a false belief that the Fund was genuine.

31.   The HMC Fund collapsed in 2005 in a typical Ponzi free fall when it had no profits, its funds had been looted and certain investors made withdrawals from the Fund. All of the the defendants, especially MASSIMI and GREBOW, had used the Fund as their personal piggy banks but the Fund could no longer meet demands for redemptions.

32.   Upon information and belief, when the Fund was collapsing, MASSIMI and GREBOW then protected themselves and alerted their family members who made massive withdrawals from the Fund and thus were preferred to the detriment of Plaintiffs.

## F. FALSIFICATION OF RECORDS

33.   GREBOW manufactured and fabricated trading account and profit and loss statements for HMC which he sent to MASSIMI who in turn prepared and circulated monthly statements for investors, which showed false monthly gains.

15

## G. USE OF MISREPRESENTATIONS TO FRAUDULENTLY INDUCE INVESTORS

34.  In order to solicit investors GREBOW misrepresented to the world the nature of HMC's business and its success in the Wall Street Journal.

35.  In order to solicit investors MASSIMI used his position to misrepresent and downplay the nature of the risk involved with HMC, the investment strategy, his performance and his role as supervisor. He used every opportunity when presented with media interviews to bolster HMC's position in investors' minds.

36.  MASSIMI also published false and misleading annual performance returns for the years 2001 through 2004 on HMC's website, and possibly in 2005 as well.

37.  GREBOW also misrepresented the funds performance to investors and confirmed to them the status of the firms' active trading and profitability, and reported fictitious returns.

38.  Between 2002 and 2004 MASSIMI sent investors' funds to GREBOW, and yet he did not establish any sort of monitoring procedure or act in any way as a supervisor concerning GREBOW's trading and use of the funds. Even when he became aware of the misappropriations of fund assets, he continued to send investors' funds to GREBOW.

16

## H. NEW FUNDS WERE USED TO PAY OFF OLD INVESTORS

39.   MASSIMI continued his advertising efforts to recruit more money for the fund.   MASSIMI continued to inflate the performance of HMC in the hopes of attracting more investors. This sort of activity follows the classic Ponzi format in which new investor money is acquired in the hopes of placating old investors so that the scam can continue.

## I. THE AMOUNTS OF EMBEZZLED FUNDS

40.   Upon information and belief, approximately $7.5 million dollars was either lost or converted by MASSIMI and GREBOW to their own account, a conversion or theft in the form of falsified profits, lavish expenses and purchases such as a $160,000 Lamborghini automobile bought by GREBOW, trips to Europe, extensive renovations to MASSIMI'S house at 110 E. Allendale Road, in Saddle River, NJ, lavish parties and rent for an apartment in New York City for JAIME L. MASSIMI.

41.   MASSIMI and GREBOW operated the fund as a Ponzi scheme from the outset in every respect.   They were both integral to the fraudulent scheme.

42.   From 2002 until 2004, Robert M. MASSIMI compensated himself lavishly to the tune of $1,187,031.45 as his personal

17

share of falsified profits. Bret GREBOW was not far behind, filling his personal coffers to the tune of $984,408.55. Additionally, the two rewarded themselves with expense accounts that burned through $659,697.64 in the same three year period.

43.　From 2002 through 2004, MASSIMI and GREBOW also withdrew phony or inflated capital contributions to the tune of $566,427 for MASSIMI and $324,680 for GREBOW. Robert MASSIMI also withdrew an additional $533,267.13 for his own use in 2005. Bret GREBOW withdrew an additional $105,778 in 2005.

## J.　ATTEMPTS TO HIDE ASSETS BY FRAUDULENT CONVEYANCES

44.　MASSIMI attempted to protect and conceal his assets from Governmental authorities and disgruntled investors shortly after the SEC began its investigation in 2004 and 2005.

45.　On August 11, 2005, Robert MASSIMI gave his 50% share of the house on 28 Holly Road to JAMIE S. MASSIMI, his ex-wife. The transfer was recorded on September 28, 2005.

46.　On October 2, 2005, JAIME L. MASSIMI opened a new brokerage account at Merrill Lynch. She is Robert MASSIMI's current wife and has the same phonetic first name as his ex-wife, but with a different spelling.

47.　On October 3, 2005, Robert MASSIMI deposited 1.5 million dollars from the Fund into his wife's new brokerage

18

account. Pursuant to a settlement with the Securities and Exchange Commission, Robert Massimi was ordered to disgorge these funds, representing profits gained as a result of the conduct alleged in the SEC Complaint, on or about February 9, 2007.

48.   MASSIMI transferred $100,000 from that account to a law firm representing HMC International LLC, effectively using other people's money to pay his legal fees.   Upon information and belief, he has paid additional legal fees using Plaintiffs' funds.

49.   MASSIMI also made two transfers from that account of $50,000.00 each to joint accounts held by him and his wife on November 18 and November 22, 2005.

50.   In November of 2005, MASSIMI also transferred his 50% ownership of the 74 Twilight Road, Bay Head, New Jersey, property to his ex-wife, JAMIE S. MASSIMI, with a deed recorded on November 11, 2005. At the time of the transfer, Massimi had at least a 50% interest in the Bay Head property.

51.   MASSIMI's current address is 110 East Allendale Road, Saddle River, New Jersey.   The house is in his current wife's name Jaime Leigh MASSIMI since on or about October, 2005.

52.   The transfers by Defendant Robert MASSIMI shifted the ownership or legal title of his assets to others, and were

19

intended to hide these assets from creditors for little or no consideration, which equitably renders them void as fraudulent transfers.

53.    None of the above transfers were for valid consideration.    An attachment of the properties pending the litigation of this suit is necessary to preserve these assets for the Plaintiffs who were defrauded by MASSIMI through HMC International LLC.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW AND ESSEX-MORGAN LLC (the HMC DEFENDANTS) FOR COMMON LAW FRAUD

54.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 53 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 53 above.

55.    The foregoing fraudulent scheme was intended to and did accomplish its end.    Plaintiffs relied on the representations made by the Defendants in good faith and without knowledge of their fraud.

56.    The HMC Defendants, directly and indirectly, individually or in concert, engaged in acts, practices and

courses of dealing that constituted common law fraud *in factum* and fraud in the inducement.

57.  The HMC Defendants made misrepresentations to potential and actual investors that were false as to the nature of investments.

58.  The HMC Defendants made false representations as to income generated from investments as well as projections based on false data. These false representations were knowingly made to investors to induce them to stay in the fund and to encourage more investments.

59.  These falsehoods were material as they were the key inducement that created investor appeal. The HMC Defendants knew of the falsity of the representations, and or ignored the truth or should have known that they were falsehoods, as they knew or should have known of the lack of substance behind the investment schemes when they made the false representations to the investor Plaintiffs.

60.  HMC Defendants intended that the Plaintiffs/investors act on these falsehoods and actually invest in their company in reliance thereon. They knew or should have known that the investor Plaintiffs were ignorant of the truth as to the nature of the investments, because the Defendants had so craftily and convincingly lied.

61.    The false representations were knowingly made by the use of verbal representations by both MASSIMI and GREBOW to investors, as well as through media publications, newsletters, mailings and the internet in such a way that Plaintiffs had good reason to rely on the misleading representations.

62.    The Plaintiffs and investors were ultimately damaged therefrom by the losses incurred approximating $7,500,000.00. The scheme was a classic Ponzi, promising large returns in a short .time with no true investment vehicle in existence capable of generating those promised returns.  In effect, funds from new investors were used to meet withdrawals of exiting investors and to provide funds for MASSIMI and GREBOW.

63.    As a result of the foregoing, Plaintiffs have been damaged for which they are entitled to and demand compensatory damages, treble damages, punitive damages and attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW, AND ESSEX-MORGAN LLC (the HMC DEFENDANTS) FOR VIOLATIONS OF (SECTION 12(2))OF THE SECURITIES ACT OF 1933**

64.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 63 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 63 above.

65.    This action, among other things, arises from and relates to the purchase and sale of investments and securities.

22