UNITED STATES DISTRICT COURT
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

LETTER OPINION

September 5, 2008

Patrick Monaghan, Jr., Esq.
Monaghan, Monaghan, Lamb & Marchisio
28 W. Grand Avenue, 2nd Floor
Montvale, NJ 07645

Kenneth F. D'Amato, Esq.
Rosenfelt & D'Amato
1187 Main Avenue, Suite 1A
Clifton, NJ 07011

Kevin P. Conway, Esq.
Conway & Conway
1700 Broadway, 31st Floor
New York, NY 10019

Robert L. Podvey, Esq.
Podvey Meanor Catenacci Hildner Cocoziello & Chattman, PC
The Legal Center
One Riverfront Plaza
Newark, NJ 07102-5497

Louis Harvey Miron, Esq.
220 Lenox Avenue
P.O. Box 2956
Westfield, NJ 07091-2956

Re:   <u>Cafaro, et al. v. HMC, et al.</u>
      **Civil Action: 07-2793 (JLL)**

Dear Counsel:

This matter comes before the Court by way of the Defendant Essex Morgan, LLC's (hereinafter "Defendant") motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.    Factual and Procedural Background**

The HMC International Hedge Fund (hereinafter "the Fund"), originally based out of Montvale, New Jersey, was created by Robert Massimi and Bret Grebow in 2002. (Compl., ¶¶ 15, 24). Plaintiffs were investors in the Fund, which was marketed to them as a pooled investment vehicle engaging in low risk day trading. (Compl., ¶ 24). Robert Massimi was the

Fund's manager and CEO, and Bret Grebow was the Fund's trader.  Robert Massimi and Bret Grebow were at all relevant times the two principals of HMC International, LLC (hereinafter "HMC").  The two men recruited approximately eighty (80) investors to their business venture, who in turn, invested close to $12.9 million dollars in the Fund starting around 2002.  (Compl., ¶ 25).  In September 2005, after certain investors made redemption demands which the Fund was unable to meet, the short-lived Fund collapsed.  (Compl., ¶ 31).

The Complaint alleges, in relevant part, that Essex-Morgan was another hedge fund operated by Robert Massimi "into which at least $700,000 had been transferred from HMC with an account balance of just under $200,000 at the end of 2004." (Compl., ¶ 22).  The Complaint further alleges that Robert Massimi "eventually discontinued its operations and transferred all remaining assets to HMC." (Id.).

On January 16, 2007, the United States Securities and Exchange Commission ("SEC") rendered judgment in a civil action against HMC, Robert Massimi, Bret Grebow, and Defendant Jaime L. Massimi (as a relief defendant), alleging violations of the securities laws of the United States.  (Compl., ¶ 16).  The judgments required Robert Massimi to disgorge $1,266,168 in profits. Id.  The SEC also ordered Robert Massimi to disgorge the $1,500,000 he deposited into his wife's brokerage account.  Id.

On June 15, 2007, Plaintiffs filed the instant Complaint against HMC, Robert Massimi, Bret Grebow, Jaime L. Massimi, Jamie S.  Massimi, Gregory Massimi, Bruno Dibello & Co., LLC, Essex-Morgan, LLC, and Schonfeld Securities, LLC F/K/A Broadway Trading and John Does 1-10,  alleging claims of fraud under the securities laws of the United States, as well as common law claims of fraud, conspiracy, breach of contract, negligence, breach of fiduciary duty, professional negligence and/or malpractice, conversion, unjust enrichment, and statutory claims pursuant to the New Jersey Consumer Fraud Act, New York's Consumer Fraud Statute, and the New Jersey Fraudulent Transfer Act. On February 4, 2008, Defendant Essex-Morgan filed a motion to dismiss those claims asserted against it, namely, (1) common law fraud, (2) violation of Section 12(2) of the Securities Act of 1933, (3) violations of section 10(b) and 10(b)(5) of the Exchange Act, (4) civil conspiracy, (5) breach of contract, (6) violation of N.J.S.A 56:8-1, (7) accounting and preservation of evidence, (8) breach of fiduciary duty, (9) conversion, and (10) unjust enrichment.

## II.     Standard of Review

### A.     12(b)(6) Standard

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled.  Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable

inferences in favor of the non-moving party.[1]  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.  See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  Id.  Ultimately, however, the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims.  Scheuer, 416 U.S. at 236.

### B. Heightened Pleading Requirements

Fed.R.Civ.P. 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud, independent of the standard applicable to a Rule 12(b)(6) motion. Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). "This particularity requirement has been rigorously applied in securities fraud cases." In re Burlington, 114 F.3d at 1417 (citations omitted). As such, plaintiffs averring securities fraud claims must specify " 'the who, what, when, where, and how: the first paragraph of any newspaper story." ' In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)). The Third Circuit has further noted that "[a]lthough Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud." ' In re Rockefeller Ctr. Props. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quoting In re Nice Sys., 135 F.Supp.2d at 577).

In addition to the Rule 9(b) requirements, plaintiffs alleging securities fraud must also comply with the heightened pleading requirements of the Reform Act, 15 U.S.C. § 78u-4(b)(1) and (b)(2).  Specifically, § 78u-4(b)(1) of the Act requires plaintiffs to "specify each statement

---

[1] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).  As a result, the Court will not consider any extraneous documents and/or exhibits submitted in support of or in opposition to the instant motion.

alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Further, with respect to securities fraud claims, such as Rule 10b-5 claims, the Reform Act requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Reform Act modified the traditional Rule 12(b)(6) analysis. " '[W]hereas under Rule 12(b)(6), we must assume all factual allegations in the complaint are true ... under the Reform Act, we disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the statute." In re Rockefeller Center, 311 F.3d at 224 (quoting Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 660 (8th Cir. 2001)). The Reform Act requires a 'strong inference' of scienter, and accordingly, alters the normal operation of inferences under Rule 12(b)(6). In re Digital Island Sec. Litig., 357 F.3d 322, 328 (3d Cir. 2004) (citing In re Rockefeller Ctr., 311 F.3d at 224) ("[U]nless plaintiffs in securities fraud actions allege facts ... with the requisite particularity ... they may not benefit from inferences flowing from vague or unspecific allegations-inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis.")); see also Greebel v. FTP Software, Inc., 194 F.3d 185, 196 (1st Cir. 1999) ("A mere reasonable inference is insufficient to survive a motion to dismiss."). The failure to meet the Reform Act's pleading requirements will result in dismissal of the complaint. In re Advanta, 180 F.3d at 531.  With this framework in mind, the Court turns now to Defendant's motion.

### III.    Legal Discussion

#### A.    Count One – Common Law Fraud

Plaintiffs' Complaint alleges that Defendant "made misrepresentations to potential and actual investors that were false as to the nature of investments," that such falsehoods were material, and that Defendant did so knowingly and intentionally. (Compl., ¶¶ 57-61).  To state a claim for fraud under New Jersey law,[2] a plaintiff must establish: (1) a material misrepresentation or omission of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity or knowing the omission to be material; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-25 (1981)). However, Rule 9(b) only requires a plaintiff to plead the fraud with particularity, not to plead every element of the offense with particularity. Seville, 742 F.2d at 792 n. 7.

Plaintiffs move to dismiss this count on the basis that "[c]ommon law fraud clearly

---

[2] It is undisputed that New Jersey law applies.

4

cannot be asserted against Essex-Morgan because Plaintiffs cannot prove any of the five elements against Essex-Morgan." (Def. Br. at 6). Defendant goes on to argue that "Plaintiffs provide no evidence of any material misrepresentation made by Essex-Morgan. . . . Additionally, Plaintiffs cannot prove that Essex-Morgan satisfies the 'knowledge or belief' element." (Id.). Thus, according to Defendant, "there is no probability that a judgment for fraud will be entered" against Defendant. (Def. Br. at 7). In opposition, Plaintiffs argue that "Defendant has failed to come forward with anything other than a self-serving affidavit that not only is factually inaccurate but also makes outright misrepresentations." (Pl. Opp'n Br. at 10).

As a preliminary matter, the Court notes that the arguments raised by both sides in support of their respective positions are not properly before this Court on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). As previously explained, the issue on a 12(b)(6) motion is not whether Plaintiffs will ultimately prevail, but whether their claims should be permitted to proceed so that they may offer evidence to support such claims. See, e.g., Scheuer, 416 U.S. at 236. Thus, the fact that "Plaintiffs cannot prove that Essex-Morgan satisfies the 'knowledge or belief' element" at this time is immaterial to the Court's instant analysis. (Def. Br. at 6) (emphasis added). Similarly, the fact that Essex-Morgan has "failed to come forward" with anything other than a self-serving affidavit is equally irrelevant to the Court's analysis at this time. (Pl. Opp'n Br. at 10). As recently clarified by the Third Circuit,

> "[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (internal citations omitted). Given Defendant's failure to provide the Court with a proper legal basis on which to dismiss Plaintiffs' common law fraud claim, the Court could deny Defendant's motion to dismiss said claim on such a basis alone. Nevertheless, for the sake of judicial efficiency, the Court will, in any event, assess whether Plaintiffs' common law fraud claim has been adequately pled.

Plaintiffs' Complaint contains absolutely no factual allegations in support of this claim.[3]

---

[3] The Court notes that in opposition to Defendant's motion to dismiss, Plaintiffs have attempted to supplement the factual allegations contained in the Complaint by stating that "it is known at this time that Essex-Morgan funds were used to cover HMC losses and that Essex-Morgan and HMC funds were commingled, thus creating a relationship between Essex-Morgan and HMC investors." (Def. Reply Br. at 11). Similarly, Plaintiffs' state – for the first time – in their opposition brief that "Essex-Morgan was an alter ego of Robert Massimi." (Id. at 12). Such allegations, however, are notably absent from Plaintiffs' Complaint. In this Circuit, it is well-settled that a plaintiff may not amend the complaint through statements contained in a brief

For instance, Plaintiffs' Complaint does not specify the alleged material misrepresentation (or omission) at issue, or the context in which such material misrepresentation (or omission) was made. See, e.g., In re Advanta Corp. Sec. Litig., 180 F.3d at 534 (noting that plaintiffs averring securities fraud claims must specify " 'the who, what, when, where, and how: the first paragraph of any newspaper story." '). Accordingly, Plaintiffs' common law fraud claim – as currently drafted – fails to comply with Rule 8(a)(2) inasmuch as it fails to give Defendant Essex-Morgan fair notice of what the claim is and the specific grounds upon which it rests. See Twombly, 127 S.Ct. at 1964. Because Plaintiffs' common law fraud claim does not meet the Rule 8 standard, it clearly fails to meet the heightened pleading standard of Rule 9(b). Count One of Plaintiffs' Complaint is therefore dismissed without prejudice.

    **B.**    **Count Two – Violation of Section 12(2) of the 1933 Act**

Count Two alleges that Essex-Morgan violated Section 12(2) of the Securities Act of 1933,[4] "by the use and means of communications in interstate commerce or the mails directly or indirectly, and oral statements in offering and selling a security to the Plaintiffs through untrue

---

filed in opposition to a motion to dismiss. See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); Shoenfeld Asset Mgmt. LLC v. Cendant Corp., 142 F. Supp. 2d 589, 613-14 (D.N.J. 2001). As a result, any such allegations – stated for the first time in Plaintiffs' opposition brief – will not be considered by the Court at this time.

[4] Section 12(2) of the 1933 Act, 48 Stat. 84, as amended, 15 U.S.C. § 77 l(2), provides, in relevant part, that any person who:

> (1) offers or sells a security in violation of section 77e of this title, or
>
> (2) offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
>
> shall be liable . . . to the person purchasing such security from him . . . .

15 U.S.C. § 77l.

statements of material facts and omission to state facts necessary in order to make the statements made by them, not misleading in light of the circumstances in which they were made." (Compl., ¶ 67).[5]

"The 1933 Act creates federal duties, particularly involving registration and disclosure, in connection with the public offering of securities. Sections 11 and 12(a)(2) impose civil liability for the making of materially false or misleading statements in registration statements and prospectuses. In particular, section 11 involves material misstatements or omissions in registration statements, while section 12(a)(2) involves prospectuses and other solicitation materials." In re Adams Golf, Inc. Securities Litig., 381 F.3d 267, 273 (3d Cir. 2004). In order to state a claim under section 12(a)(2), Plaintiffs must allege that they purchased securities pursuant to a materially false or misleading "prospectus or oral communication." Id.

Defendant moves to dismiss Count Two of Plaintiffs' Complaint on the basis that "[t]he 1933 Act clearly does not apply to Essex-Morgan because (i) there was no offering; (ii) no securities were sold pursuant to a registration statement or prospectus and (iii) even if there was an offering, it was not registered." (Def. Br. at 8). In opposition, Plaintiffs argue that "[o]ther than a self-serving statement from Defense Counsel, there is no evidence that Essex-Morgan did not make an offering, that no securities were sold, or if any of the offerings were registered. . . However, at this time Plaintiffs can show that there were material misrepresentations made with regard to HMC and that HMC relied upon funds obtained from Essex-Morgan (from unknown sources) to cover HMC losses and disbursements." (Pl. Opp'n Br. at 11-12).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964 -1965. Plaintiffs' Complaint – as currently drafted – merely recites the elements of a cause of action under Section 12(2) in a conclusory fashion. For instance, the Complaint alleges that HMC, Robert Massimi, Bret Grebow and Essex-Morgan each violated section 12 "by the use and means of communications in interstate commerce or the mails directly or indirectly, and oral statements in offering an selling a security to the Plaintiffs through untrue statements of material facts and omission to state facts necessary in order to make the statements made by them, not misleading in light of the circumstances in which they were made." (Compl., ¶ 67). The Complaint does not, however, identify the specific "untrue statements of material facts" or omissions allegedly made by Essex-Morgan, or the context in which such misrepresentations and/or omissions were allegedly made. Without such

---

[5] "Although fraud is not a necessary element of a claim under section 12(2), section 12(2) claims that do sound in fraud must be pled with particularity." In re Westinghouse Securities Litig., 90 F.3d 696, 717 (3d Cir. 1996). Defendant has not raised this issue. Because the Court finds that Plaintiffs' claim under section 12(2) fails to meet the Rule 8 standard, the Court need not determine whether Plaintiffs' claim as against Essex-Morgan sounds in fraud, and thus whether the heightened pleading standard of Rule 9(b) applies.

7

factual allegations, Plaintiffs have failed to "raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. In light of the foregoing, Count Two of Plaintiffs' Complaint fails to comply with Rule 8(a)(2) inasmuch as it fails to provide Essex-Morgan with adequate notice of the nature of the specific section 12 claim at issue, and the grounds upon which it rests. Count Two of Plaintiffs' Complaint is thus dismissed, without prejudice.

### C. Count Three – Violation of Section 10(b) of the Exchange Act and Rule 10b-5

Plaintiffs' Complaint alleges that Essex-Morgan engaged in unlawful conduct "in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of mails, or of the facilities of a national securities exchange, with scienter, or were reckless in not knowing that the representations set forth herein were false and misleading," in violation of Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. (Compl., ¶ 71).

Section 10(b) proscribes the "use or employ[ment], in connection with the purchase or sale of any security, ... [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5, in turn, makes it illegal "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b). As the Third Circuit has observed, "[t]he private right of action under Section 10(b) and Rule 10b-5 reaches beyond statements and omissions made in a registration statement or prospectus or in connection with an initial distribution of securities and creates liability for false or misleading statements or omissions of material fact that affect trading on the secondary market." In re Burlington Coat Factory, 114 F.3d at 1417 (citing Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994)) (footnote omitted); Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216-17 (1st Cir. 1996); Eckstein v. Balcor Film Investors, 8 F.3d 1121, 1123-24 (7th Cir. 1993), cert. denied, 510 U.S. 1073 (1994).

The following pleading requirements must be met to establish a valid claim under § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5(b) (1998): defendant "(1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or the sale of a security (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury." In re Ikon Office Solutions, Inc. Sec. Litig., 277 F.3d 658, 666 (3d Cir. 2002); see also Kline v. First Western Government Securities, Inc., 24 F.3d 480, 487 (3d Cir.), cert. denied sub nom., Arvey, Hodes, Costello & Burman v. Kline, 513 U.S. 1032 (1994). Moreover, since a securities fraud claim is being asserted, the plaintiff must satisfy the heightened pleading requirements of Federal Rule 9(b) and of the Reform Act, 15 U.S.C. § 78u-4(b)(1) and (b)(2).[6]

---

[6] In addition, under the Sarbanes-Oxley Act, such a cause of action must be brought no later than the earlier of "(1) two years after the discovery of the facts constituting the violation; or

See, e.g., Osio v. DeMane, No. 05-2283, 2006 WL 2129460, at *4-5 (D.N.J. June 20, 2006).

Defendant Essex-Morgan moves to dismiss this claim on the basis that "Plaintiffs cannot show that Essex-Morgan made any material misrepresentations" or that Defendant had the mental state embracing intent to deceive, manipulate or defraud. (Def. Br. at 9). Once again, the Court notes that the standard on a 12(b)(6) motion is not whether Plaintiffs have shown the requisite elements for their § 10(b) and Rule 10b-5 claims. Rather, the standard is whether Plaintiffs' Complaint sets forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and whether such statement gives Defendant Essex-Morgan fair notice of what the claim is and the grounds upon which it rests. See generally Twombly, 127 S.Ct. at 1964-65.

Plaintiff's § 10(b) and Rule 10b-5 claims do not specify " 'the who, what, when, where, and how." In re Advanta Corp. Sec. Litig., 180 F.3d at 534. Plaintiffs' claim, as currently drafted, provides absolutely no factual allegations regarding the specific statement alleged to have been misleading, the reason or reasons why the statement is misleading, the time frame in which such statement was made or discovered by Plaintiffs, or any other facts which otherwise bolster Plaintiffs' claim in this regard. Without such factual allegations, Plaintiffs' claim fails to comply with Fed. R. Civ. P. 8(a)(2), and certainly fails to comply with the heightened pleading requirements set forth by Fed. R. Civ. P. 9(b) and § 78u-4(b)(1) and (b)(2) of the Reform Act. Plaintiffs' § 10(b) and Rule 10b-5 claims are, therefore, dismissed without prejudice.

### D.     Count Five – Civil Conspiracy

Plaintiffs' Complaint alleges that HMC, Robert Massimi, Bret Grebow and Essex-Morgan, "conspired between and among themselves to withhold from the Plaintiffs the true facts regarding the handling of investment monies and securities, all in an effort to reap financial benefits for themselves to the detriment of Plaintiffs. Plaintiffs relied on the false and fraudulent representations, which induced them to make the subject investments and were thereby damaged." (Compl., ¶¶ 74-75). Defendant Essex-Morgan moves to dismiss this claim on the basis that "Plaintiffs do not sufficiently plead that Robert Massimi, Bret Grebow, HMC and Essex-Morgan LLC agreed to defraud them." (Def. Br. at 10).

Under New Jersey law, a plaintiff must allege facts stating that "two or more persons [were] acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury

---

(2) 5 years after such violation." 28 U.S.C. 1658(b). Thus the "violation" (i.e., the misrepresentation or omission) is the triggering event and Plaintiffs must have filed their action within two years of discovering sufficient facts regarding the alleged fraud. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991) (stating that litigation instituted pursuant to § 10(b) and Rule 10b-5 must be commenced within the applicable time frame following the alleged misrepresentations).

upon another, and an overt act that results in damage." Banco Popular N.A. v. Gandi, 184 N.J. 161, 177 (2005) (quoting Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)); see Farris v. County of Camden, 61 F. Supp. 2d 307, 330 (D.N.J. 1999).  Liability will attach if the participants understand the general scheme, accept the terms of it – either explicitly or implicitly, and do their part to further it.  Gandi, 184 N.J. at 177 (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)).  The "gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.' " Morgan, 268 N.J. Super. at 364 (quoting Bd. of Educ. v. Hoek, 38 N.J. 213, 238 (1962)).  However, a plaintiff cannot state a claim for civil conspiracy by making "conclusory allegations of concerted action," without including allegations of fact regarding defendants' joint action.  Abbot v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998); see Adams v. Teamsters Local 115, 214 Fed. Appx. 167, 175 (3d Cir. 2007).

Plaintiffs characterize this cause of action as "common law fraud and conspiracy." Accordingly, the Court will assume that the underlying wrong alleged is Plaintiffs' claim of common law fraud, asserted in Count One of Plaintiffs' Complaint.  Having already dismissed Plaintiffs' common law fraud claim for failure to comply with Rules 8(a) and 9(b), Plaintiffs' claim for civil conspiracy must likewise be dismissed for the same reasons.  See, e.g., Brown ex rel. Estate of Brown v. Philip Morris Inc., 228 F.Supp.2d 506, 517 n. 10 (D.N.J. 2002) ("Civil conspiracy is not an independent cause of action, and conspiracy liability depends on the presence of an underlying finding of tort liability. . . The dismissal of plaintiff's other causes of action demands the dismissal of her conspiracy claim.").  The Court's dismissal in this regard will be without prejudice to the extent that Plaintiffs cure the pleading defects in Count One.

### E.   Count Seven – Breach of Contract

Plaintiffs' Complaint alleges that Plaintiffs "entered into an investment contract with the defendants HMC and or Essex-Morgan," and that "Defendants HMC and or Essex-Morgan LLC breached the agreement by failing to invest monies, by taking unwarranted fees, by taking expenses in excess of those allowable, and otherwise by fraudulently embezzling funds deposited in good faith by Plaintiffs into what they believed were legitimate investment hedge funds." (Compl., ¶¶ 85-86).

To establish a breach of contract claim, Plaintiffs have the burden of showing that (a) the parties entered into a valid contract, (b) that Defendant failed to perform its obligations under the contract, and (c) that Plaintiffs sustained damages as a result thereof. See Murphy v. Implicito, 2005 WL 2447776, at *4 (N.J. Super. Ct. App. Div. Sept. 22, 2005) (citing Coyle v. Englander's, 199 N.J. Super. 212, 223 (N.J. Super. Ct. App. Div. 1985)).  Defendant Essex-Morgan moves to dismiss Plaintiffs' breach of contract claim on the basis that "none of the Plaintiffs had any contract with Essex-Morgan."  (Def. Br. at 10).

Although certain statements made by Plaintiffs in their opposition brief give the Court

pause,[7] accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that Plaintiffs' breach of contract claim passes muster under Rule 8. According to the Complaint, (a) Plaintiffs entered into an investment contract with Essex-Morgan, (b) Essex-Morgan breached the agreement by failing to invest monies, taking unwarranted fees, and fraudulently embezzling funds, and (c) Plaintiffs sustained damages as a result of this breach. See Compl., ¶¶ 85-86; 62. Whether or not Plaintiffs' claim will ultimately succeed remains to be seen. Nevertheless, in light of the foregoing, the Court finds that Plaintiffs' breach of contract claim has been adequately pled at this time. See, e.g., Scheuer, 416 U.S. at 236 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). Defendant Essex-Morgan's motion to dismiss Plaintiffs' breach of contract claim is therefore denied.

### F.    Count Nine – Unfair, Unconscionable and Deceptive Trade Practices

Plaintiffs' Complaint alleges that Defendant's practices, acts, policies and course of conduct violated New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 ("CFA"), as well as the provisions of New York's Consumer Fraud Statute. Defendant Essex-Morgan moves to dismiss Plaintiffs' New Jersey CFA claim on the basis that securities do not fall within the purview of the CFA. Plaintiffs do not dispute this,[8] nor can they. See Stella v. Dean Witter Reynolds, Inc., 241 N.J.Super. 55, 75 (N.J. Super. Ct. App. Div. 1990) (agreeing with trial court that plaintiff was not entitled to recover for a violation of the New Jersey Consumers Fraud Act, N.J.S.A. 56:8-2 and N.J.S.A. 56:8-19, "because a fraud in the sale of shares of stock or other securities is not within the compass of that statute."). Defendant's motion to dismiss this portion of Plaintiffs' claim is granted.

Defendant also moves to dismiss the portion of this claim based on the New York Consumer Fraud Statute claim on the basis that Plaintiffs were not investors of Essex-Morgan, and thus cannot bring a claim for violation of Section 339(a) of New York's General Business Law. The Court notes that Plaintiffs' Complaint does not identify the specific section (or

---

[7] In particular, the Court notes that in sharp contrast to the allegations set forth in the Complaint, Plaintiffs insinuate in their opposition brief that were not investors in the Essex-Morgan hedge fund, and thus had no contractual relationship with Essex-Morgan. (Pl. Opp'n Br. at 13). For instance, Plaintiffs explain that "it can be shown that Essex-Morgan was nothing more than an alter ego of Robert Massimi with whom each of the Plaintiffs had an investment agreement." (Id.). Plaintiffs' Complaint, however, contains no factual allegations in support of this theory. Accordingly, although the Court finds that Plaintiffs' breach of contract claim, as currently pled, satisfies the Rule 8 pleading requirements, Plaintiffs may wish to amend this claim to include factual allegations in support of the actual legal theory on which they are proceeding.

[8] See Pl. Opp'n Br at 13.

sections) of New York's Consumer Fraud Statute which Plaintiffs believe Defendant violated.[9] Although Essex-Morgan has construed Plaintiffs' claim as one brought pursuant to Section 339(a) of New York's General Business Law, the Court declines to engage in any such speculative analysis given Plaintiffs' failure to properly plead the specific claim at issue. Accordingly, it is the finding of this Court's that Plaintiffs' claim pursuant to New York's Consumer Fraud Statute, as currently drafted, fails to comply with Rule 8 in that it fails to give Defendant proper notice of the specific violation alleged, and the grounds upon which it rests. See, e.g., Twombly, 127 S.Ct. at 1964-65 (noting that a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."). Defendant's motion to dismiss this claim in its entirety is, therefore, granted. The Court's dismissal in this regard is without prejudice.

### G. Count Ten – Accounting and Preservation

Plaintiffs' Complaint alleges that Defendant Essex-Morgan "received funds and assets which in equity belong to the plaintiffs." (Compl., ¶ 100). It is therefore alleged that Plaintiffs are "entitled to an accounting as to all their invested monies in the [HMC] Fund from defendants in charge of or in possession of these assets or who benefitted therefrom." (Compl., ¶ 99). "An accounting in equity cannot be demanded as a matter of right or of course. The exercise of the equitable jurisdiction to compel an account rests upon three grounds – first, the existence of a fiduciary of trust relation; second, the complicated nature of character of the account; and third, the need of discovery." Borough of Kenilworth v. Graceland Memorial Park Ass'n, 124 N.J. Eq. 35, 37 (N.J. Ch. Ct. 1938).

Defendant moves to dismiss this claim on the basis that "Plaintiffs cannot satisfy any of the three grounds required to compel an account." (Def. Br. at 12). In particular, Defendant Essex-Morgan argues that "there is no evidence of a fiduciary relationship between Essex-Morgan and the Plaintiffs." (Id.). Once again, Defendant misconstrues the 12(b)(6) standard. The issue currently before this Court is not whether Plaintiffs will ultimately prevail on this claim, or whether there is a "likelihood that final judgment will be rendered in favor of Plaintiffs" – as Defendant would have it. (Def. Br. at 7-12). See, e.g., Scheuer, 416 U.S. at 236. Rather, the sole issue before this Court is whether Plaintiffs' Complaint contains a short and plain statement of the claim which gives Defendant fair notice of what the claim is and the grounds upon which it rests. Twombly, 127 S.Ct. at 1964-65. Any assessment beyond this would be premature given that Plaintiffs have not yet had the benefit of discovery in this matter. In any event, given that Defendant in no way challenges the sufficiency of Plaintiffs' pleading of this claim, Defendant's motion to dismiss said claim pursuant to Rule 12(b)(6) is denied.

### H. Count Eleven – Breach of Fiduciary Duty

---

[9] Plaintiffs' opposition brief is equally unavailing. See Pl. Opp'n Br. at 13.

Plaintiffs' Complaint alleges that Defendant Essex-Morgan owed "owed a fiduciary duty as trustees in care of the invested assets of the Plaintiffs and other investors to prevent the wasting of assets through negligence, conversion, theft, improper trades, improper business expenses and all other forms of fraud." (Compl., ¶ 102). "By virtue of said breach of fiduciary duty, Plaintiffs have suffered injury and seek damages herein." (Id., ¶ 103).

"A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship . . . The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care.  Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship." F.G. v. MacDonell, 150 N.J. 550, 563 (1997) (internal citations omitted).  Defendant moves to dismiss this claim on the basis that "Plaintiffs have not and cannot establish that a fiduciary relationship exists Essex-Morgan and them because Plaintiffs do not have a contract with Essex-Morgan." (Def. Br. at 13). Defendant goes on to argue that because none of the Plaintiffs were investors of Essex-Morgan, "there is no likelihood [that] judgment will be entered in their favor on this cause of action." (Id.).  Once again, Defendant misconstrues the 12(b)(6) standard.  See, e.g., Twombly, 127 S.Ct. at 1964-65; Scheuer, 416 U.S. at 236.  Because Defendant does not challenge the sufficiency of Plaintiffs' pleading, the Court will allow Plaintiffs' claim for breach of fiduciary duty to proceed at this time.[10]  Defendant's motion to dismiss this claim is, therefore, denied.

### I.     Count Twelve – Conversion

The Complaint alleges that the Defendant Essex-Morgan "received investment money belonging to Plaintiffs," "converted said funds" for its own use, and as a result, "Plaintiffs have deprived of their assets." (Compl., ¶¶ 105-108).  Plaintiffs' Complaint contains no additional facts in support of this claim.  Defendant moves to dismiss this claim on the basis that the facts alleged, even if proven, do not satisfy the necessary requirements for a claim of conversion under New Jersey law.  See Def. Br. at 10.

Generally speaking, the tort of conversion "is the exercise of any act of dominion in denial of anothers' title to the chattels or inconsistent with such title." Mueller v. Technical Devices Corp., 84 A.2d 620, 623 (N.J. 951).  " 'A wrongful detention of property, where another is entitled to the immediate possession thereof is a conversion.' " Zelano v. Zelano, No. SOM-C-12038-04, 2005 WL 2008328, at *2 (N.J. Super. Ct. August 11, 2005) (quoting 89 C.J.S. Trover and Conversion § 50).  For a conversion claim to be valid, "it is essential that the money converted by a tortfeasor must have belonged to the injured party." Commercial Ins. Co. v. Apgar, 267 A.2d 559, 562 (N.J. Super. Ct. App. Div. 1970).  Furthermore, "[t]he elements of

---

[10] Even if Defendant had challenged the sufficiency of Plaintiffs' pleading in this regard, given the allegation contained in the Complaint that "Plaintiffs entered into an investment contract with the defendants HMC and or Essex-Morgan" (Compl., ¶ 85), the Court would, in any event, allow Plaintiffs' breach of fiduciary duty claim to proceed at this time.

conversion are lacking [if the] [p]laintiff does not have the right to immediate possession of the [property]." Pereira v. United Jersey Bank, N.A., 201 B.R. 644, 675 (S.D.N.Y. 1996). Finally, "it is well settled that where possession of chattels is lawfully acquired, a demand therefor and refusal to deliver is generally necessary before an action in trover and conversion will accrue." Mueller, 84 A.2d at 623.

Having considered the parties' arguments, the Court agrees with Defendant that Plaintiff's conversion claim as against Essex-Morgan fails to state a claim upon which relief may be granted. In particular, the Court notes that the very limited factual allegations asserted in support of this claim concern an alleged debt. See Compl., ¶ 52 ("The transfers by Defendant Robert Massimi shifted the ownership or legal title of his assets to others, and were intended to hide these assets from creditors"). The Appellate Division has specifically stated that "[a]n action for conversion will not lie in the context of mere debt . . . . Where there is no obligation to return the identical money, but only a relationship of a debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." Advanced Enters. Recyling, Inc. v. Bercaw, 869 A.2d 468, 472 (N.J. Super. Ct. App. Div. 2005). This claim – as currently drafted – alleges merely that Defendant owes Plaintiffs money by virtue of its relationship with Robert Massimi. Not only is this claim premised on a debt, but the alleged debtor at issue is not even Defendant. See Compl., ¶¶ 22, 86 (alleging that Robert Massimi fraudulently embezzled $700,000 from Plaintiffs by transferring such funds from HMC to Essex-Morgan). Given such allegations, Plaintiffs have failed to "raise a right to relief above the speculative level." Wilkerson, 522 F.3d at 321. See, e.g., Scholes Elec. & Commc'ns, Inc. v. Frasor, No. 04-3898 (JAP) 2006 WL 1644920, at *5 (D.N.J. 2006) ("When money, as opposed to tangible property, is the subject of a conversion claim, New Jersey courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion."). Accordingly, Plaintiffs' claim of conversion, as against Defendant Essex-Morgan, fails to state a claim upon which relief may be granted. Plaintiffs' claim is, therefore, dismissed without prejudice.

### J.  Count Thirteen – Unjust Enrichment

The Complaint alleges that Defendant Essex-Morgan was unjustly conferred a benefit through its use of HMC funds belonging to Plaintiffs. (Compl., ¶¶ 110-13). In particular, the Complaint alleges that Defendant "wrongfully, intentionally and/or negligently used, and received the benefit of said funds entrusted to their care to their own purposes, unjustly enriching them," and that, as a result, Defendant should reimburse Plaintiffs by placing such proceeds in a collective trust. (Compl., ¶ 111). Defendant moves to dismiss Plaintiffs' claim on the basis that Plaintiffs conferred no such benefit on Essex-Morgan. (Def. Br. at 15).

Unjust enrichment is an equitable remedy, requiring for recovery that there be both an enrichment and an injustice resulting if recovery for the enrichment is denied. See VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J.1994). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or

conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id.

The conduct underlying Plaintiffs' unjust enrichment claim, as alleged in the Complaint, sounds in tort. The Appellate Division has found that the Restatement of Torts does not recognize unjust enrichment as an independent tort cause of action. See Castro v. NYT Television, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion."). Plaintiffs do not allege that they performed or otherwise conferred a benefit on Defendant under a quasi-contractual relationship with the expectation of remuneration. Rather, Plaintiffs assert a variety of tort claims against Defendant for which they clearly did not anticipate or expect remuneration. Assuming the facts alleged in the Complaint are true, Plaintiffs could not have anticipated – let alone expected – remuneration for Defendant's alleged conversion of HMC funds. (Compl., ¶86). See, e.g., VRG Corp., 641 A.2d at 526 (explaining that the "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant"). As a result, Plaintiffs' claim for unjust enrichment fails to state a claim upon which relief can be granted. Defendant's motion to dismiss this claim is therefore granted.

## IV. Conclusion

Based on the reasons set forth above, the Court denies Defendant's motion to dismiss the following claims: breach of contract; accounting and preservation; and breach of fiduciary duty.[11]

The Court grants Defendant's motion to dismiss the following claims: common law fraud; violation of Section 12(2) of the 1933 Act; violation of Section 10(b) and Rule 10b-5 of the Exchange Act; civil conspiracy; unfair, unconscionable and deceptive trade practices; conversion; and unjust enrichment. Such claims are dismissed without prejudice.[12] Plaintiffs have thirty (30) days from the entry of the attached order to file an Amended Complaint which cures the pleading deficiencies in such claims. Plaintiffs' failure to file such an Amended Complaint will result in the dismissal of such claims with prejudice. An appropriate Order accompanies this Opinion.

Sincerely,

/s/ Jose L. Linares
United States District Judge

---

[11] Counts 7, 10 and 11 may therefore proceed at this time.

[12] Counts 1, 2, 3, 5, 12 and 13 are thus dismissed without prejudice.