UNITED STATES DISTRICT COURT
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

LETTER OPINION

September 5, 2008

Patrick Monaghan, Jr., Esq.
Monaghan, Monaghan, Lamb & Marchisio
28 W. Grand Avenue, 2nd Floor
Montvale, NJ 07645

Kenneth F. D'Amato, Esq.
Rosenfelt & D'Amato
1187 Main Avenue, Suite 1A
Clifton, NJ 07011

Kevin P. Conway, Esq.
Conway & Conway
1700 Broadway, 31st Floor
New York, NY 10019

Robert L. Podvey, Esq.
Podvey Meanor Catenacci Hildner Cocoziello & Chattman, PC
The Legal Center
One Riverfront Plaza
Newark, NJ 07102-5497

Louis Harvey Miron, Esq.
220 Lenox Avenue
P.O. Box 2956
Westfield, NJ 07091-2956

Re:   **Cafaro, et al. v. HMC, et al.**
       **Civil Action: 07-2793 (JLL)**

Dear Counsel:

This matter comes before the Court by way of Defendant Jaime L. Massimi's (hereinafter "Defendant") motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.    Factual and Procedural Background**

The HMC International Hedge Fund (hereinafter "the Fund"), originally based out of Montvale, New Jersey, was created by Robert Massimi and Bret Grebow in 2002. (Compl., ¶¶ 15, 24). Plaintiffs were investors in the Fund, which was marketed to them as a pooled

investment vehicle engaging in low risk day trading. (Compl., ¶ 24). Robert Massimi was the Fund's manager and CEO, and Bret Grebow was the Fund's trader. Robert Massimi and Bret Grebow were at all relevant times the two principals of HMC International, LLC (hereinafter "HMC"). The two men recruited approximately eighty (80) investors to their business venture, who in turn, invested close to $12.9 million dollars in the Fund beginning in 2002. (Compl., ¶ 25). In September 2005, after certain investors made redemption demands which the Fund was unable to meet, the short-lived Fund collapsed. (Compl., ¶ 31).

The Complaint alleges, in relevant part, that Robert Massimi transferred various portions of his estate to his current wife, Defendant Jaime L. Massimi,[1] in an attempt to insulate his assets from investor lawsuits. (Compl., ¶ 44). In this regard, on October 3, 2005, one month following the Funds' collapse, the Complaint alleges that Robert Massimi deposited $1,500,000 profit from the Fund into a new brokerage account his wife had recently established. (Compl., ¶ 47). During this time period, it is also alleged that Robert Massimi transferred his interest in one of his properties, located at 110 East Allendale Road, Saddle River, New Jersey, to the Defendant. (Compl., ¶ 51). They had previously acted as joint owners of this property. (Compl., ¶ 18).

On January 16, 2007, the United States Securities and Exchange Commission ("SEC") rendered judgment in a civil action against HMC, Robert Massimi, Bret Grebow, and Jaime L. Massimi (as a relief defendant), alleging violations of the securities laws of the United States. (Compl., ¶ 16). The judgments required Robert Massimi to disgorge $1,266,168 in profits. Id. The SEC also ordered Robert Massimi to disgorge the $1,500,000 he deposited into Defendant Jaime L. Massimi's brokerage account in October 2005. Id.

On June 15, 2007, Plaintiffs filed the instant Complaint against HMC, Robert Massimi, Bret Grebow, Jaime L. Massimi, Jamie S. Massimi, Gregory Massimi, Bruno Dibello & Co., LLC, Essex-Morgan, LLC, and Schonfeld Securities, LLC F/K/A Broadway Trading and John Does 1-10, alleging claims of fraud under the securities laws of the United States, as well as common law claims of fraud, conspiracy, breach of contract, negligence, breach of fiduciary duty, professional negligence and/or malpractice, conversion, unjust enrichment, and statutory claims pursuant to the New Jersey Consumer Fraud Act, New York's Consumer Fraud Statute, and the New Jersey Fraudulent Transfer Act. On February 4, 2008, Defendant Jaime L. Massimi filed a motion to dismiss those claims asserted against her, namely, (a) writ of attachment, (b) conversion, (c) unjust enrichment and (d) fraudulent conveyance.

## II.     Standard of Review

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable

---

[1] It is also alleged that Robert Massimi transferred different property assets to his ex-wife, Jamie S. Massimi, who is also a defendant in this matter.

inferences in favor of the non-moving party.[2]  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.  See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

     A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  Id.  Ultimately, however, the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims.  Scheuer, 416 U.S. at 236.  With this framework in mind, the Court turns now to Defendant's motion.

**III.     Legal Discussion**

     **A.     Count Six – Writ of Attachment**

     Plaintiffs' Complaint alleges, generally, that Plaintiffs are entitled to a writ of attachment as to the property interest transferred by Robert Massimi to his wife shortly after the Fund's collapse to prevent further dissipation of Robert Massimi's assets pending resolution of this litigation. (Compl., ¶ 44).  Defendant moves to dismiss this claim on the basis that (a) a writ of attachment is not a "stand alone cause of action," (b) Plaintiffs' claim fails to assert a relevant statutory basis.  (Def. Br. at 5-9).

     Federal Rule of Civil Procedure 64 ("Seizure of Person or Property"), provides the following:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district

---

[2] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record.  See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).  As a result, the Court will not consider any extraneous documents and/or exhibits submitted in support of or in opposition to the instant motion.

> court is held, existing at the time the remedy is sought, subject to [certain] qualifications . . . .

Fed. R. Civ. P. 64. The relevant New Jersey Court Rule governing applications for writs of attachment is N.J. Ct. R. 4:60-5(a). This rule provides that a writ of attachment shall issue where:

> (1) there is a probability that final judgment will be rendered in favor of the plaintiff;
> (2) there are statutory grounds for issuance of the writ; and
> (3) there is real or personal property of the defendant at a specific location within this State which is subject to attachment.

N.J. Ct. R. 4:60-5(a). The Supreme Court of New Jersey has explained that "[t]he writ of attachment is an extraordinary process, and jurisdiction to issue it must be shown by the party suing out such writ." Corbit v. Corbit, 13 A. 178, (N.J. 1888). "Moreover, the statute and court rules regarding attachment must be strictly construed." Wolfson v. Bonello, 637 A.2d 173, 181 (N.J. Super. Ct. App. Div. 1994) (citing Lundy v. Collitti, 382 A.2d 94, 96 (N.J. Super. Ct. 1977)). Plaintiffs rely on two statutory grounds in support of their claim for a writ of attachment as against Defendant: (1) New Jersey's attachment statute, N.J.S.A. § 2A:26-2; and (2) New Jersey's capias ad respondendum statute, N.J.S.A. § 2A:15-42. (Compl., ¶ 81).

The Court will address each statutory ground, in turn, but must first consider whether Plaintiffs' claim for a writ of attachment qualifies as an independent cause of action. Defendant argues that an Order of Attachment is not an independent cause of action, but merely a form of relief that can be granted pursuant to N.J. Ct. R. 4:60-5(a) if there is a probability that a final judgment under another cause of action will be rendered in favor of Plaintiffs. (Def. Br. at 5). Although Defendant cites to no legal authority in support of such an argument, as a practical matter, the Court agrees that Plaintiffs' request for a writ of attachment as against Defendant Jaime L. Massimi rises or falls with the substantive claims asserted against this Defendant. To the extent that no such claims survive, Plaintiffs will have no basis on which to seek a writ of attachment against Jaime L. Massimi, inasmuch as there will be no "probability that final judgment will be rendered in favor" of Plaintiffs. N.J. Ct. R. 4:60-5(a). In any event, given Defendant's failure to provide any legal authority in support of her request to dismiss this claim on such a basis, the Court declines to do so. Accordingly, the Court will proceed in assessing whether Plaintiffs' request for a writ of attachment is otherwise adequately pled in the Complaint.

N.J.S.A. § 2A:26-2

New Jersey's attachment statute, N.J.S.A. § 2A:26-2, provides, in relevant part, as follows:

> An attachment may issue out of the superior court upon the application of any resident or nonresident plaintiff against the

> property, real and personal, of any defendant in any of the following instances:
>
> a. Where the facts would entitle plaintiff to an order of arrest before judgment in a civil action . . . or
>
> b. Where the defendant absconds or is a nonresident of this state, and a summons cannot be served on him in this state . . . or
>
> c. Where the cause of action existed against a decedent, which survives against his heirs, devisees, executors, administrators or trustees, and there is property in this state which by law is subject to plaintiff's claim . . . or
>
> d. Where plaintiff has a claim of an equitable nature as to which a money judgment is demanded against the defendant, and the defendant absconds or is a nonresident and a summons cannot be served upon him in this state; or
>
> e. Where the defendant is a corporation created by the laws of another state but authorized to do business in this state and such other state authorizes attachments against New Jersey corporations authorized to do business in that state.

N.J.S.A. § 2A:26-2.[3]  However, the Complaint fails to identify which subsections of the statute apply specifically to Defendant Jaime L. Massimi.  Similarly, the Complaint fails to provide any factual support for any of the circumstances set forth in N.J.S.A. § 2A:26-2.  For instance, the Complaint does not allege that the Defendant is a nonresident of New Jersey or that Defendant has absconded.  In light of the foregoing, it is the opinion of this Court that Count Six, to the extent it is based upon N.J.S.A. § 2A:26-2, fails to contain sufficient factual allegations to "raise a right to relief above the speculative level." Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d. Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965).

N.J.S.A. § 2A:15-42

Count Six is also based upon N.J.S.A. § 2A:15-42, which is known as the capias ad respondendum statute.  N.J.S.A. § 2A:15-42, provides, in relevant part, the following:

> A capias ad respondendum shall issue in an action founded upon contract, express or implied, due to plaintiff from defendant, only

---

[3] N.J.S.A. § 2A:26-1 provides that "[t]his chapter shall be liberally construed, as a remedial law for the protection of resident and nonresident creditors and claimants."

>when the proof establishes the particulars specified in one or more of the following subparagraphs:
>
>a. That defendant is about to remove any of his property out of the jurisdiction of the court in which the action is about to be commenced or is then pending with intent to defraud his creditors; or
>
>b. That defendant has property or choses in action which he fraudulently conceals; or
>
>c. That defendant has assigned, removed or disposed of, or is about to assign, remove or dispose of, any of his property with intent to defraud his creditors; or
>
>d. That defendant fraudulently contracted the debt or incurred the demand.

Thus, N.J.S.A. § 2A:15-42, requires, as a precondition for a writ of attachment, that the action be "**founded upon contract**, express or implied, **due to plaintiff from defendant** . . . ." N.J.S.A. § 2A:15-42 (emphasis added). As a result, in order to obtain a writ of attachment on the basis of the capias ad respondendum statute, the Complaint must, at the very least, allege the existence of a contractual relationship between Plaintiffs and Defendant. See, e.g., Allied Fin. Corp. v. Steel Panel Sales Corp., 205 A.2d 904, 909 (N.J. Super. Ct. App. Div. 1964) (confirming that a writ of attachment action must be founded upon a contract, whether expressly or through a quasi-contract theory). Plaintiffs concede that no such contract exists. (Pl. Opp'n Br. at 16-17). Instead, Plaintiffs rely on Lourdes v. Kupperman, No. 06-5014, 2007 WL 2814660 (D.N.J. Sept. 25, 2007), for the proposition that this Court should abandon its requirement that the action be founded upon a contract when considering a request for a writ of attachment. (Pl. Opp'n Br. at 16-18).

As an initial matter, the district court's decision in Lourdes is not binding on this Court, particularly in interpreting matters of state law.[4] In any event, despite expressing some doubt about whether a writ of attachment need specifically derive from a contract between the two parties, Lourdes did not explicitly abandon the well-established principle that a plaintiff must allege a prima facie case that a contractual relationship existed between itself and the defendant. See Lourdes, 2007 WL 2814660, at * 5 (noting that "Plaintiff has made out a prima facie case that a contractual relationship existed between Plaintiff and Defendants."). In failing to allege a

---

[4] See generally Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 224 (3d Cir. 2005) (stating that a federal district court can only "predict how [the New Jersey Supreme Court] would rule . . . [and that federal courts] may consider lower state court precedents to be more predictive than conflicting federal court precedents").

6

prima facie contractual relationship between Plaintiffs and Defendant Jaime L. Massimi, Count Six, to the extent it is based upon N.J.S.A. § 2A:15-42, fails to allege sufficient facts, which, even if ultimately proven, state a claim under N.J.S.A. § 2A:15-42.  See, e.g., Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.") (quoting Twombly, 127 S.Ct. at 1964-65).  Accordingly, Defendant's motion to dismiss Count Six of Plaintiffs' Complaint is granted.  Count Six of Plaintiffs' Complaint is hereby dismissed, in its entirety, without prejudice.

### B. Count Twelve – Conversion

The Complaint alleges that Defendant Jaime L. Massimi "received investment money belonging to Plaintiffs," "converted said funds" for her own use, and as a result, "Plaintiffs have been deprived of their assets." (Compl., ¶¶ 105-108).   Plaintiffs go on to allege, albeit in their opposition brief, that Defendant used such money belonging to the Fund for personal amenities such as vacation expenses, country club dues, a personal driver and furnishing of her apartment.  See Pl. Opp'n Br. at 20.[5]  Plaintiffs' Complaint contains no additional facts in support of this claim.  Defendant moves to dismiss this claim on the basis that the facts alleged, even if proven, do not satisfy the necessary requirements for a claim of conversion under New Jersey law.  See Def. Br. at 10.

Generally speaking, the tort of conversion "is the exercise of any act of dominion in denial of anothers' title to the chattels or inconsistent with such title." Mueller v.  Technical Devices Corp., 84 A.2d 620, 623 (N.J. 951).  " 'A wrongful detention of property, where another is entitled to the immediate possession thereof is a conversion.' " Zelano v.  Zelano, No. SOM-C-12038-04, 2005 WL 2008328, at *2 (N.J. Super. Ct. August 11, 2005) (quoting 89 C.J.S. Trover and Conversion § 50).  For a conversion claim to be valid, "it is essential that the money converted by a tortfeasor must have belonged to the injured party." Commercial Ins. Co. of Newark v. Apgar, 267 A.2d 559, 562 (N.J. Super. Ct. App. Div. 1970).  Furthermore, "[t]he elements of conversion are lacking [if the] [p]laintiff does not have the right to immediate possession of the [property]."  Pereira v.  United Jersey Bank, N.A., 201 B.R. 644, 675 (S.D.N.Y. 1996).  Finally, "it is well settled that where possession of chattels is lawfully acquired, a demand therefor and refusal to deliver is generally necessary before an action in trover and conversion will accrue." Mueller, 84 A.2d at 623.

---

[5] In this Circuit, it is well-settled that a plaintiff may not amend the complaint through statements contained in a brief filed in opposition to a motion to dismiss. See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); Shoenfeld Asset Mgmt. LLC v. Cendant Corp., 142 F. Supp. 2d 589, 613-14 (D.N.J. 2001).  Any such allegations regarding Defendants use of the funds at issue – to the extent they may bolster Plaintiffs' claim of conversion – will not be considered by the Court since they were not contained in Plaintiffs' Complaint.

Having considered the parties' arguments, the Court agrees with Defendant that Plaintiffs' conversion claim as against Defendant Jaime L. Massimi fails to state a claim upon which relief may be granted.  In particular, the Court notes that the very limited factual allegations asserted in support of this claim concern an alleged debt.  See Compl., ¶ 52 ("The transfers by Defendant Robert Massimi shifted the ownership or legal title of his assets to others, and were intended to hide these assets from creditors"). The Appellate Division has specifically stated that  "[a]n action for conversion will not lie in the context of mere debt . . . .  Where there is no obligation to return the identical money, but only a relationship of a debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." Advanced Enters. Recyling, Inc. v.  Bercaw, 869 A.2d 468, 472 (N.J. Super. Ct. App. Div. 2005).  This claim – as currently drafted – alleges merely that Defendant owes Plaintiffs money by virtue of her relationship with Robert Massimi.  Not only is this claim premised on a debt, but the alleged debtor at issue is not even Defendant – it is Defendant's husband.  See Compl., ¶¶ 47, 52 (alleging that Robert Massimi deposited 1.5 million dollars from the Fund into his wife Defendant Jaime L. Massimi's bank account "to hide these assets from creditors.").  Given such allegations, Plaintiffs have failed to "raise a right to relief above the speculative level." Wilkerson, 522 F.3d at 321.  See, e.g., Scholes Elec. & Commc'ns, Inc. v. Frasor,  No. 04-3898, 2006 WL 1644920, at *5 (D.N.J. 2006) ("When money, as opposed to tangible property, is the subject of a conversion claim, New Jersey courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion.").  Accordingly, Plaintiffs' claim of conversion, as against Defendant Jaime L. Massimi, fails to state a claim upon which relief may be granted.  Plaintiffs' claim is, therefore, dismissed without prejudice.

### C. Count Thirteen – Unjust Enrichment

The Complaint also alleges that the Defendant was unjustly conferred a benefit through her use of the Funds' proceeds. (Compl. ¶ 110-13).  In particular, the Complaint alleges that Defendant "wrongfully, intentionally and/or negligently used, and received the benefit of said funds entrusted to their care to their own purposes, unjustly enriching them," and that, as a result, Defendant should reimburse Plaintiffs by placing such proceeds in a collective trust.   (Compl., ¶ 111).  Defendant moves to dismiss Plaintiffs' claim on the basis that Plaintiffs conferred no such benefit on her, nor did she entertain any type of relationship with the Plaintiffs that would justify remuneration.  See Def. Br. at 12.

Unjust enrichment is an equitable remedy requiring for recovery that there be both an enrichment and an injustice resulting if recovery for the enrichment is denied. See VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id.

The conduct underlying Plaintiffs' unjust enrichment claim, as alleged in the Complaint, sounds in tort. The Appellate Division has found that the Restatement of Torts does not recognize unjust enrichment as an independent tort cause of action. See Castro v. NYT Television, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion."). Plaintiffs do not allege that they performed or otherwise conferred a benefit on Defendant under a quasi-contractual relationship with the expectation of remuneration. Rather, Plaintiffs assert a variety of tort claims against Defendant for which they clearly did not anticipate or expect remuneration. Even assuming the facts alleged in the Complaint are true, Plaintiffs could not have anticipated – let alone expected – remuneration for Defendant's alleged conversion of Plaintiffs' money. See, e.g., VRG Corp., 641 A.2d at 526 (explaining that the "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant"). As a result, Plaintiffs' claim for unjust enrichment fails to state a claim upon which relief can be granted. Defendant's motion to dismiss this claim is therefore granted.

### D.     Count Fourteen – Fraudulent Conveyance

Finally, the Complaint alleges that Defendant is liable for fraudulent conveyance by knowingly accepting assets transferred by Robert Massimi, and attempting to place those assets beyond Plaintiffs' reach. See Compl. ¶¶ 115-17. Defendant moves to dismiss Plaintiffs' fraudulent conveyance claim on the basis that such transfers do not fall within New Jersey's definition of fraudulent conveyance. See Def. Br. at 13-20. The Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 to -34 ("UFTA"), governs Plaintiffs' fraudulent conveyance claim.[6] See generally Gilchinsky v. Nat'l Westminster Bank N.J., 732 A.2d 482, 488-89 (N.J. 1999). The UFTA provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

---

[6] Plaintiffs assert that the Fraudulent Conveyance Act ("FCA"), N.J.S.A. 25:2-3, controls its claim against the Defendant. (Pl. Opp'n Br. at 23). However, "[i]n 1988, New Jersey adopted the Uniform Fraudulent Transfer Act . . . to replace the Uniform Fraudulent Conveyance Law, which had been in effect since 1919." Flood v. Caro Corp., 640 A.2d 306, 308-9 (N.J. Super. Ct. App. Div. 1994). See also National Westminster Bank NJ v. Anders Eng'g, Inc., 674 A.2d 638, 640 (N.J. Super. Ct. App. Div. 1996). Accordingly, the Court will assess Plaintiffs' claim as one brought pursuant to the UFTA.

9

>b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
>(2) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. § 25:2-25 (2007). In considering a UFTA claim, the Court applies the heightened pleading standard of Rule 9(b). See, e.g., Ford Motor Credit Co. v. Chiorazzo, 529 F. Supp. 2d 535, 538 (D.N.J. 2008); see also Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 n.2 (3d Cir. 2003). Accordingly, Plaintiffs' Complaint must set forth, with particularity, the alleged fraudulent actions committed by the Defendant. See e.g., In re Suprema Specialties, Inc. Sec. Lit., 438 F.3d 256, 270 (3d Cir. 2006). Based on the reasons that follow, this Court finds that Plaintiffs have adequately pled a claim of fraudulent conveyance as against Defendant Jaime L. Massimi.

First, the Complaint provides sufficient facts to support the claim that the transfer did not involve "an exchange for a reasonably equivalent value." Robert Lewis Rosen Associates, Ltd. v. Webb, 2006 WL 2590321, *7 (N.J. Super. Ct. App. Div. 2007). See Compl. ¶52-53 ("None of the above transfers were for valid consideration."). The Complaint alleges that the transfer was made between husband and wife. See Compl. ¶51. See United Jersey Bank v. Vajda, 690 A.2d 693, 695 (N.J. Super. Ct. App. Div. 1997) ("Transfers made to close relatives are especially suspect."). In addition, the Complaint provides details of "the approximate time that it occurred, the people [involved when] the transfer was made, and the amount and type of value transferred." Ford Motor Credit Co., 529 F. Supp. 2d at 539 (stating that a complaint which lists the approximate year and month of an alleged fraud can provide sufficient notice for a defendant). For instance, the Complaint alleges that Robert Massimi transferred his interest in a property located at 110 East Allendale Road, Saddle River, New Jersey, to the Defendant on or around October 2005. (Compl. ¶ 51). In light of the foregoing, and based upon the inclusion of specific factual allegations regarding the individuals involved, the assets transferred, and the general time frame of the transfer (Compl. at ¶¶ 44, 49, 51, 52, 115), Plaintiffs have placed Defendant "on notice of the precise conduct with which [she is] charged," and have thus met the Rule 9(b) standard. See, e.g., Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Defendant's motion to dismiss Plaintiffs' fraudulent conveyance claim is, therefore, denied.

IV. **Conclusion**

Based on the reasons set forth above, the Court denies Defendant's motion to dismiss

Plaintiffs' fraudulent conveyance claim.  The Court grants Defendant's motion to dismiss Plaintiffs' claims for writ of attachment, conversion and unjust enrichment.  The Court's dismissal in this regard is <u>without</u> prejudice.

      Plaintiffs have thirty (30) days from the entry of the attached order to file an Amended Complaint which cures the pleading deficiencies in such claims.  Plaintiffs' failure to file such an Amended Complaint will result in the dismissal of such claims <u>with</u> <u>prejudice</u>.  An appropriate Order accompanies this Opinion.

      Sincerely,

      /s/ Jose L. Linares
      United States District Judge