**Robert Massimi**
Defendant Pro Se
110 East Allendale Road
Saddle River, NJ 07458
201-264-1034

RECEIVED IN THE CHAMBERS OF

FEB 28 2011

HON. CLAIRE C. CECCHI

February 22, 2011

Hon. Claire C. Cecchi, U.S.M.J.
U.S. District Court, District of NJ
MLK, Jr. Federal Bldg. & US Courthouse
50 Walnut Street
Newark, NJ  07102

    re:    Cafaro et al HMC International, LLC et al
           Case No. 07-CV-02793-JLL

Dear Judge Cecchi:

    On behalf of myself, the following is my letter-brief (analysis) of the conflict-of-interest issues in this litigation concerning my motion to disqualify Beattie Padovano, LLC and Patrick Monaghan, Esq. from continuing to represent any parties in this lawsuit.

Factual background showing conflict of interest:

    During the late 1990's, Robert Massimi and other Massimi family members had an ongoing, steady relationship with the law firm, *Larkin, Axelrod, Ingrassia & Tetenbaum, LLP* of Newburgh, NY pertaining to their personal lives and their family textile business, Arma Textiles, Inc.. This relationship was one in which **intimate financial details of the Massimi family members and Robert Massimi,** were presented to that law firm to be considered and analyzed by their lawyers for the following purposes:

1. Litigation;
2. Mediation;
3. Arbitration;
4. Contracts for deals among Arma Textiles and other businesses;
5. Buyouts and acquisitions;
6. Estate planning for Robert Massimi and his parents;
7. Writing wills for Robert Massimi and his parents;
8. General advice on a variety of matters pertaining to our financial, personal and business interests; and
9. Closing out Robert Massimi's interests in Arma Textiles when he sold out his interest in the family business. (Axelrod handled the closing.)

During the time that Robert Massimi was being represented by the *Larkin* law firm, he met quite a few times with partner, Axelrod in his Newburgh, NY office, had numerous phone calls and also had conference calls with Robert Massimi's accountant and insurance agent participating for

the purpose of taking care of intimate personal, financial and business matters for Robert Massimi and other Massimi family members. The *Larkin* firm also became familiar with Robert Massimi's temperament, business-conducting style, personality traits, strengths and weaknesses, and attitudes about settling disputes or litigating them.

The *Larkin* law firm initially entered this litigation defending Robert Massimi's brother, Richard Massimi. Although the *Larkin* law firm was simply <u>defending</u> Richard Massimi, even at that stage, there was at least the <u>potentiality</u> of a conflict of interest, because there was always the possibility that Richard Massimi could have divulged intimate knowledge of Robert Massimi's finances, habits, methodology, personality, assets, liabilities, income and other personal information to members of the *Larkin* law firm. That could have given Richard Massimi an edge in defense, if he was going to take the position of blaming Robert Massimi for wrongdoing as part of his defense.

Because the *Larkin* law firm was a New York firm not admitted in New Jersey, it became the Pro Hac Vice attorneys and hired the New Jersey firm of *Beattie, Padovano* as its local counsel. There is strong circumstantial evidence that the *Larkin* and *Beattie* firms were already sharing details and inside information that should not have been shared with the plaintiffs' lawyer in this case, *Patrick J. Monaghan, Jr.* This is evidenced by the fact that Robert Massimi's lawyer at the time, Kevin Conway, Esq., called Robert Massimi at an early point in the litigation sounding quite concerned and distressed. Conway told Robert Massimi that *Monaghan* had claimed to Conway that Richard Massimi had stated that "Robert knew that this fund was not on the up and up." While representing Richard Massimi, *Beattie Padovano*'s partner, Chagris, participated in conference calls with the court and others, attended status conferences with the court and even personally sent bills to the *Larkin* law firm for his firm's time spent on the case on behalf of Richard Massimi. Eventually, Richard Massimi was dismissed as a defendant in this litigation.

Sometime after that, *Monaghan* merged his own 6-member law firm with *Beattie Padovano*. The intimate knowledge of Robert Massimi's finances, habits, methodology,, personality, assets, liabilities, income and personal information thereby went through a logical journey:

*Larkin* to (old) *Beattie Padovano* to (new, merged) *Beattie Padovano* with *Monaghan*.

Monaghan now seeks to continue to represent plaintiffs in this matter. No doubt, he has already accessed and used some of the detailed information against Robert Massimi----the same information that *Larkin* had about Robert Massimi and the whole Massimi family----despite the unfair advantage and actual conflict of interest shown by the above facts and relationship history.

There is one other added factor showing considerable entanglement: Robert Massimi sat on the Board of Directors of St. Joseph's with *James (Jim) Beattie* for nine years. During that time, they became very friendly, sharing intimate details of their lives, working together to keep St. Joseph's afloat financially. *Jim* apparently respected Robert Massimi's hard work watching over St. Joseph's finances. *Jim* knew that Robert Massimi had been selected with two others to be on the "business" side of the Board. *Jim* always used to give Robert Massimi a big smile at the monthly meetings, telling him "to keep up the good work." **Robert Massimi even used *Jim*'s law firm to form a company while they served on the Board together.** *Jim* and Robert Massimi used to each other at St. Joseph's gatherings after the Board meetings and they always spoke to each other.

Thus, both the *Larkin* and *Beattie* law firms have done legal work for Robert Massimi involving a wealth of detailed, intimate information about Robert Massimi. Yet the *Beattie* firm, with *Monaghan* now part of it, seeks to continue to represent plaintiffs despite not only the <u>actual</u> conflict of interest, but the <u>appearance</u> of a conflict of interest.

<u>Legal Argument</u>:

Initially, it should be noted that Chapter 15 of the *Law Society's Guide to Professional Conduct by Lawyers* (7th edition, 1996), states "there must be ….an ethical wall, otherwise known as a Chinese Wall" prohibiting a lawyer from being given the opportunity to use intimate knowledge acquired while representing a person to then turn around and represent someone else who is suing that person.

Conflict of interest issues are governed by Rule of Professional conduct (RPC) 1.7, which provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:
>
> (1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
>
> (c) This rule shall not alter the effect of case law or ethics opinions to the effect that:
>
> (1) in certain cases or categories of cases involving conflicts or apparent conflicts, consent to continued representation is immaterial, and

>(2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

Under the pertinent portions of the above RPC it seems apparent that the representation of plaintiffs by *Monaghan* and his new firm, *Beattie Padovano*, are definitely adverse to Robert Massimi's interests. In addition, there has been no consent given by Robert Massimi to the arrangement, as is required under the rules cited above. As such, it evidences a clear violation of RPC for *Monaghan* and his firm, *Beattie Padovano* to be representing plaintiffs in this case.

There are a number of Ethics Opinions that held such representation under those circumstances to be improper: See attached **Ethics Opinion No. 678**, which held that where an attorney was represented in a personal injury matter while the client/attorney was the inquirer's adversary in an unrelated contract case and that both parties in the contract case had consented to the representation of the adversary counsel after full disclosure of the circumstances and after consultation, even then, it could not be allowed because it created the "appearance of impropriety" in contravention of case law and then DR 9-101:

>"....we conclude that this inquiry should be analyzed under RPC 1.7(c)(2), which pertains to situations creating an "appearance of impropriety." Mindful that the New Jersey Supreme Court "has had a long history of requiring attorneys to avoid even the appearance of impropriety," In re Petition for Review of Opinion No. 569, 103 N.J. 325, 329 (1986), we embark on this analysis with the understanding that "[t]he 'appearance' doctrine is intended not to prevent any actual conflicts of interest but to bolster the public's confidence in the integrity of the legal profession." Id. at 330; see also In re Opinion 415, 81 N.J. 318, 323 (1979) ("the appearance doctrine is intended to instill public confidence in the integrity of the legal profession."). That principle was well stated in State v. Rizzo, 69 N.J. 28, 30 (1975):

>>[A] lawyer must avoid even the appearance of impropriety, DR9-101, to the end that the image of disinterested justice is not impoverished or tainted. Thus it is that sometimes an attorney, guiltless in any actual sense, nevertheless is required to stand aside for the sake of public confidence in the probity of the administration of justice. See also State v. Galati, 64 N.J. 572, 576 (1974) ("Thus we must notice that in matters of ethics and professional probity, the cause and effect impact upon the public consciousness is almost, perhaps quite, as important as the actual fact.").

>"[T]he 'appearance' of impropriety must be something more than a

> fanciful possibility. It must have some reasonable basis." *Higgins v. Advisory Comm. on Professional Ethics*, 73 *N.J.* 123, 129 (1977). Moreover, the Supreme Court has directed that, "[w]hether an appearance of impropriety exists is not to be determined in a vacuum." *In re Opinion 415, supra*, 81 *N.J.* at 325. Rather, "It is ... the viewpoint of the public from which this Court has chosen to judge whether particular conduct would constitute the appearance of impropriety. 'We must view the conduct as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted.'" *In re Opinion 569, supra*, 103 *N.J.* at 331 (quoting *In re Opinion* 415, *supra*, 81 *N.J.* at 325).
>
> Although the inquirer assures this Committee that the clients in both of the matters involved have consented to the proposed representation, it is from the public eye's view, rather than the clients', that the "appearance" is adjudged. *See Perillo v. Advisory Comm. on Professional Ethics*, 83 *N.J.* 366, 373 (1980). Under the inquirer's proposal, an "ordinary knowledgeable citizen" could conclude that the inquirer might obtain some advantage in the contract case by reason of his being his adversary's counsel in the personal injury litigation. As well, an informed citizen could conclude that, conversely, the inquirer might obtain an advantage for his client/attorney by reason of his being his adversary in the contract case. We find that both possible outcomes would be considered improper in the public mind as an informed citizen could conclude that the dual representation would pose a "substantial risk of disservice to either the public interest or the interest of one of the clients." RPC 1.7(c)(2).

In **Ethics Opinion 579** the committee considered whether it was a conflict of interest for a lawyer to represent Client A in an action for partition of property owned jointly by A and B and in an action to dissolve a partnership between A and B where the inquirer previously represented A and B in a joint purchase of the property. The committee concluded that it was not, because of the appearance of impropriety:

> There are numerous ethics opinions, which, although not dealing with the specific set of facts presented by the inquirer, are sufficiently analogous and support the conclusion of the Committee. Opinion 205, 94 *N.J.L.J.* 451 (1971) dealt with whether an attorney may represent a client in an action against a former partner of the client when the attorney had previously represented a corporation wherein both men were principals in the corporation. The Committee concluded under the facts presented in that inquiry that there was a very definite possibility of a conflict of interest. The Committee quoted from *In re Blatt*, 42 *N.J.* 522, 524 (1964),

the following: "There is always a possibility, however remote, that confidential information received from the original client may be used to his detriment."

The Committee then said:

> We have stated many times that if there is the slightest doubt as to whether a proposed representation involves such a conflict of interest, or may encompass the use of special knowledge or information obtained through service of another client, or necessitates a possible conflict between the interests of a present or former client and those of the attorney, the doubt must be resolved by the attorney taking a definite stand that he cannot serve two masters. Opinion 205, *supra*.

An analogous situation to the one in this litigation was present in **Ethics Opinion 234** in which a lawyer who had represented one defendant in a criminal case was considering representing that first client's co-defendant in a criminal case. The committee urged the lawyer not to do it, saying:

> The impropriety of taking a case against a former client is not based solely on necessity for disclosure of confidential communication. If the former client has any reason to feel aggrieved, the necessity of maintaining proper public relations for the bar and of avoiding the **appearance of wrongdoing** should cause the attorney to refuse to accept employment in a capacity which is adverse to the interests of the former client.
>
> Raymond L. Wise in his book on *Legal Ethics* summarizes the problem in the following language:
>
> **If there is the slightest doubt** as to whether or not the acceptance of professional employment will involve a conflict of interest between two clients or with a former client, or a conflict between the interests of any client and that of the attorney, or may require the use of information obtained through the service of another client, **the employment should be refused**. Wise, *Legal Ethics* 273 (2d ed. 1970). *See also* A.B.A. Comm. on Professional Ethics and Grievances, Opinion 165 (1936).
>
> In our opinion it would be unwise for attorney Z to undertake the representation of A unless he is convinced, beyond doubt, that the subject matter of the prior representation of B and the present pending charge against him are unrelated; that the prior representation of B will not adversely affect B's interests in the pending matter; that in representing A he will not be called upon to use any confidential information or secrets obtained in his former representation of B and that his former representation of B will not prevent him from

representing A with undivided fidelity. **All that we have said applies to any attorney associated with attorney Z.**

The committee emphasized that not only must the inquiring attorney not represent the party under those circumstances, but nor should "any attorney associated...." Applying that to the present situation, since the *Larkin* firm had represented Robert Massimi and his family in numerous intimate personal and business matter, had also represented Richard Massimi in the present litigation, had associated with the *Beattie* firm by hiring them as local counsel; and because the *Beattie* firm was now merged with *Monaghan*, the *Beattie* firm and *Monaghan* should now be compelled to cease representing plaintiffs in this lawsuit. Anything less will positively create an appearance of impropriety, at the very least, and in actuality, an actual conflict of interest, because of the potentiality of transmission of confidential information and insight about Robert Massimi.

There is also the problem of the *Beattie* law firm now having to take a **contradictory position** in this lawsuit to the one it took when it still represented a defendant (Richard Massimi). At that time, as part of its answer for Richard Massimi, it denied the allegations of the complaint. Now, in representing plaintiffs, it is urging acceptance of the allegations of the complaint----a diametrically opposite position. This is similar to that prohibited in **Ethics Opinion 427** where the committee prohibited a lawyer who had successfully represented a daughter of his proposed new clients (her parents) on her appeal of a conviction to a motor vehicle charge (failing to yield). In the subsequent lawsuit by her parents against the daughter, the lawyer had to allege that her failure to yield was a contributing factor in causing the accident and being negligent----a position opposite to that argued earlier in the appeals court in support of reversing her conviction. The committee stated:

> In our opinion this representation is improper. In his representation of the daughter on the appeal of the motor vehicle violation conviction, the attorney was obligated to use his best efforts to persuade the court that the daughter did not commit the violation with which she was charged. In his prosecution of the suit for damages against the daughter and the driver of the other car, the attorney will be obligated to take precisely the opposite position; namely that the daughter's negligence, an element of which would doubtless be the failure to yield, was a contributing factor to the accident. The proper administration of justice cannot tolerate a lawyer taking these diametrically opposite positions in the same matter. *See* ABA Comm. on Professional Ethics, Informal Decision C-753 (1964).

Thus, not only are Ethics Committees concerned about actual conflict of interest and the appearance of impropriety, but they to not want a lawyer to have to argue "diametrically opposite positions in the same matter" which is exactly what *Beattie Padovano* is attempting to do in this litigation.

Finally, even in situations where the earlier representation consisted only of an in-office conference with the lawyer, because of the inherent possibility that certain confidences might have been revealed in that conference, a lawyer should not thereafter represent another party to that same litigation. This was made clear in **Ethics Opinion 356** wherein a wife in a divorce action had initially conferred with a law firm about her situation and the same law firm thereafter

wanted to represent her husband in the appeal of the divorce action, just based on transcripts and evidence that another lawyer had introduced. The Committee stated:

> Although the conflict here may seem somewhat tenuous, it is real and it is dispositive. In *In re Blatt*, 42 *N.J.* 522, 524 (1964), the Court said:
>
>> Where a member of the bar represents a litigant in a cause, he should not thereafter represent the opposing party in any step in the proceedings in or arising out of the same cause. There is always a possibility, however remote, that confidential information received from the original client may be used to his detriment. Such conduct is plainly and patently unethical.
>
> And in Opinion 86, 88 *N.J.L.J.* 773 (1966), which dealt with a situation analogous to that presented here, we said:
>
>> The attorney seems to believe that because he was not retained, made no notes, and received no consultation fee, there would be nothing improper in later representing the other spouse. To this conclusion, we cannot agree. If, after being consulted, the obligation of an attorney to a prospective client under Canon 6, to avoid representing conflicting interests, or under Canon 37, to preserve his client's confidences, were limited to a case in which a retainer was accepted, and notes were made by the lawyer, every prospective client would be afraid to consult a lawyer for fear that he might later take the other side of the controversy. See also Opinion 89, 89 *N.J.L.J.* 66 (1966).
>
> Accordingly, we conclude that the inquirer and all members of his firm are precluded from writing an appeal for the husband.

**Conclusion and Summary:**

Based on the above facts, precedents and legal argument, it would appear that the court will have no choice but to disqualify *Beattie Padovano* and its member attorney, *Patrick J. Monaghan, Jr.*, from continuing to represent plaintiffs in this lawsuit, because of:

1. Actual conflict of interest from having had extensive confidential information in prior representation of Robert Massimi and the Massimi family;
2. Appearance of impropriety because of the situation;
3. Lack of consent of the former client, Robert Massimi; and
4. Having to take a contradictory position in this litigation to the one taken when former co-defendant, Richard Massimi, was still being represented.

Very truly yours,

*Robert Massimi*

**Appendix:**

Copies of Ethics Opinions 678, 579, 427, 234 and 356, cited above, follow.

# Opinion 678

138 *N.J.L.J.* 1186

November 21, 1994

3 *N.J.L.* 2246
November 21, 1994

**ADVISORY COMMITTEE ON PROFESSIONAL ETHICS**

**Appointed by the Supreme Court of New Jersey**

**Opinion 678**

**Conflict of Interest: Representation in a Personal Injury Matter of an Attorney who is an Adversary in an Unrelated Contract Case.**

This inquiry concerns the ethical propriety of the inquirer's representation of an attorney in a personal injury matter while the client/attorney is the inquirer's adversary in an unrelated contract case. The inquirer states that both parties in the contract case have consented to the representation of the adversary counsel after full disclosure of the circumstances and after consultation.

The general rule for conflicts of interest that governs this inquiry, Rule of Professional Conduct (RPC) 1.7, provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:

(1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and

(2) each client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after a full disclosure of the circumstances and consultation with the

client, except that a public entity cannot consent to any such representation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

(c) This rule shall not alter the effect of case law or ethics opinions to the effect that:

(1) in certain cases or categories of cases involving conflicts or apparent conflicts, consent to continued representation is immaterial, and

(2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

The inquirer contends that RPC 1.7(b) governs this matter, and that representation of the inquirer's client in the contract litigation will not be influenced or adversely affected by the inquirer's representation of opposing counsel in an unrelated matter. Moreover, the inquirer proffers that RPC 1.7(c) is inapplicable to the situation at hand because "[t]his is not the type of case involving conflicts or apparent conflicts in which consent is immaterial" and "this case is not one which creates an appearance of impropriety."

This Committee has not previously addressed the inquirer's question, *i.e.*, whether an attorney may represent an opposing attorney in a matter unrelated to the matter in which the attorneys are adversaries. Had we agreed with the inquirer and applied RPC 1.7(b) when analyzing the proposed representation, we would have concurred that the representation would have been permitted. See footnote 1[1]  However, we conclude that this inquiry should be analyzed under RPC 1.7(c)(2), which pertains to situations creating an "appearance of impropriety." Mindful that the New Jersey Supreme Court "has had a long history of requiring attorneys to avoid even the appearance of impropriety," *In re Petition for Review of Opinion No. 569*, 103 *N.J.* 325, 329 (1986), we embark on this analysis with the understanding that "[t]he 'appearance' doctrine is intended not to prevent any actual conflicts of interest but to bolster the public's confidence in the integrity of the legal profession." *Id.* at 330; see also *In re Opinion 415*, 81 *N.J.* 318, 323 (1979) ("the appearance doctrine is intended to instill public confidence in the integrity of the legal profession."). That principle was well stated in *State v. Rizzo*, 69 *N.J.* 28, 30 (1975):

[A] lawyer must avoid even the appearance of impropriety, DR9-101, to the end that the image of disinterested justice is not impoverished or tainted. Thus it is that sometimes an attorney, guiltless in any actual sense, nevertheless is required to stand aside for the sake of public confidence in the probity of the administration of justice.

See also *State v. Galati*, 64 *N.J.* 572, 576 (1974) ("Thus we must notice that in matters of ethics and professional probity, the cause and effect impact upon the public consciousness is almost, perhaps quite, as important as the actual fact.").

11

"[T]he 'appearance' of impropriety must be something more than a fanciful possibility. It must have some reasonable basis." *Higgins v. Advisory Comm. on Professional Ethics*, 73 *N.J.* 123, 129 (1977). Moreover, the Supreme Court has directed that, "[w]hether an appearance of impropriety exists is not to be determined in a vacuum." *In re Opinion 415*, *supra*, 81 *N.J.* at 325. Rather, "It is ... the viewpoint of the public from which this Court has chosen to judge whether particular conduct would constitute the appearance of impropriety. 'We must view the conduct as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted.'" *In re Opinion 569*, *supra*, 103 *N.J.* at 331 (quoting *In re Opinion* 415, *supra*, 81 *N.J.* at 325).

Although the inquirer assures this Committee that the clients in both of the matters involved have consented to the proposed representation, it is from the public eye's view, rather than the clients', that the "appearance" is adjudged. *See Perillo v. Advisory Comm. on Professional Ethics*, 83 *N.J.* 366, 373 (1980). Under the inquirer's proposal, an "ordinary knowledgeable citizen" could conclude that the inquirer might obtain some advantage in the contract case by reason of his being his adversary's counsel in the personal injury litigation. As well, an informed citizen could conclude that, conversely, the inquirer might obtain an advantage for his client/attorney by reason of his being his adversary in the contract case. We find that both possible outcomes would be considered improper in the public mind as an informed citizen could conclude that the dual representation would pose a "substantial risk of disservice to either the public interest or the interest of one of the clients." RPC 1.7(c)(2).

The following scenario also presents itself under the proposed representation: to prevent offending his attorney/client, the inquiring attorney may modify his behavior or tactics in the matter in which the attorneys are adversaries. Again, the question before us is not whether the inquiring attorney would actually alter his advocacy for one client to preserve an attorney/client relationship with the opposing attorney; rather, the question is whether the proposed representation creates an appearance of impropriety. *See* Opinion 549, 114 *N.J.L.J.* 628 (1984). And, we find that it does.

This Committee has previously addressed a similar issue involving a public entity. In ACPE Docket No. 40-93(A) we dealt with the issue of whether a law firm that represents an assistant prosecutor in a personal injury matter may practice criminal defense law in the same county where the prosecutor is employed. In that inquiry, we concluded that the representation was permissible "as long as the assistant prosecutor in question is not now prosecuting any criminal defendants represented by [the inquirer's] firm" and a screening mechanism is maintained inside the law firm. The present inquirer distinguishes his situation from one where his adversary/would-be-client were an assistant prosecutor. He reasons that, in that case, the representation would be impermissible because the assistant prosecutor's employer is a public entity and as such could not consent to the proposed representation. We do not agree that the circumstance of a public entity's inability to consent would be the determinative factor in assessing the permissibility of representation as presented in ACPE Docket No. 40-93(A). Rather, we find that the reasons prohibiting the requested representation in the present inquiry, *i.e.*, that the public may conclude that the inquiring attorney or the client/attorney may obtain unfair advantages and that the inquiring attorney may, in some manner, suppress vigorous

representation to preserve his relationship with his client/attorney, apply equally to the situation presented in ACPE Docket No. 40-93(A).

In conclusion, we find that the inquirer's proposed representation of his adversary in an unrelated matter would create an appearance of impropriety. In so holding, we recognize that the only other ethics tribunal to have considered this question under the appearance of impropriety doctrine reached a different result from ours. *See* Illinois Opinion 822 (April 4, 1983), ABA/BNA Lawyers' Manual on Professional Conduct: Ethics Opinions 1980-1985 at 801:3015.

Nevertheless, we find the proposed conduct to be impermissible.

*Footnote: 1* [1]

*Other ethics tribunals that have considered this question under ethics rules analogous to RPC 1.7(b) have allowed the representation. See New York State Bar Association Committee on Professional Ethics Opinion No. 579, 1987 WL 109295 (March 20, 1987) (permitting such representation provided that both attorneys satisfy themselves that the proposed representation will not compromise representation of existing clients; the existing clients give informed consent to dual representation following full disclosure; and, it is apparent that neither attorney will be called upon to reveal or use any confidences or secrets of the existing clients); Maryland Opinion 82-4 (October 3, 1991), ABA/BNA Lawyers' Manual on Professional Conduct: Ethics Opinions 1980-1985 at 801:4313 (permitting such representation provided both that the clients consent after full disclosure and that representation of the attorney/client would not be likely to result in "less that vigorous defense" of the existing client); cf. Illinois Opinion 89-3 (July 17, 1989) 5 ABA/BNA Lawyers' Manual on Professional Conduct 17 (allowing law firm to engage opposing law firm as local counsel in a matter unrelated to their adversarial matter without the client's consent because no facts presented supported speculation that any client would be prejudiced or harmed by the proposed representation).*

# Opinion 579

117 *N.J.L.J.* 244

February 27, 1986

**ADVISORY COMMITTEE ON PROFESSIONAL ETHICS**

**Appointed by the Supreme Court of New Jersey**

**OPINION 579**

**Conflict of Interest - Representation of Client and Clients's Partner in Purchase of House, and of Client in Subsequent Partition**

This Committee has been asked whether it is ethically proper for an attorney to represent Client A in an action for partition of property owned jointly by A and B and in an action to dissolve a partnership between A and B where the inquirer previously represented A and B in a joint purchase of the property. Although the inquirer did not prepare any of the papers in

connection with that purchase, she did attend the closing as the attorney for both of them. Subsequently, the inquirer reviewed a lease for the A and B partnership with respect to rental of a craft booth at a mall and gave them legal advice concerning the terms and conditions of the lease. The inquirer has performed no legal services for either A or B since 1981.

The present inquiry is governed by RPC 1.9(a) which provides: "a lawyer who has represented a client in a matter shall not thereafter:

(1) represent another client in the same or a substantially related matter in which the client's interest are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client; or

(2) use information relating to the representation to the disadvantage to the former client except as RPC 1.6 would permit with respect to a client or when the information has become generally known."

RPC 1.9(b) incorporates by reference the provisions of RPC 1.7(c) which states that the rule does not alter the effect of existing case law or ethics opinions with respect to the appearance of impropriety.

While the inquirer represents that in her prior representation of A and B she obtained no information concerning the finances of either individual or the partnership, she did represent both parties at the closing on the purchase of the property and, therefore, would have reviewed all of the relevant financial documents and, most likely, have retained copies in her file on those clients. The inquirer's representation of former client A in a partition action, with respect to the property, would be a matter substantially related to the earlier acquisition in which she represented both A and B and, therefore, under the requirements of RPC 1.9(a)(1) the inquirer would, at a minimum, be required to fully disclose to former client B the request that the inquirer represent former client A and obtain former client B's consent.

There are numerous ethics opinions, which, although not dealing with the specific set of facts presented by the inquirer, are sufficiently analogous and support the conclusion of the Committee. Opinion 205, 94 *N.J.L.J.* 451 (1971) dealt with whether an attorney may represent a client in an action against a former partner of the client when the attorney had previously represented a corporation wherein both men were principals in the corporation. The Committee concluded under the facts presented in that inquiry that there was a very definite possibility of a conflict of interest. The Committee quoted from *In re Blatt*, 42 *N.J.* 522, 524 (1964), the following: "There is always a possibility, however remote, that confidential information received from the original client may be used to his detriment."

The Committee then said:

We have stated many times that if there is the slightest doubt as to whether a proposed representation involves such a conflict of interest, or may encompass the use of special knowledge or information obtained through service of another client, or necessitates a possible conflict between the interests of a present or former client and those of the attorney, the doubt must be resolved by the attorney taking a definite stand that he cannot serve two masters. Opinion 205, *supra*.

The inquirer cites, for the benefit of the Committee, language from Opinion 154, 92 *N.J.L.J.* 353 (1969). In that Opinion, the inquiry was presented as to whether an attorney could properly undertake a negligence action against an individual whom the attorney had formerly represented in an unrelated municipal court case. The Committee assumed for purposes of rendering the Opinion that the municipal court matter had been dismissed and that the parties and circumstances involved in the municipal court matter were entirely different from those which gave rise to the negligence matter. It is clear that Opinion 154, *supra*, is distinguishable from the facts presented by the inquirer since in the case presently before the Committee, the parties and to a large extent the circumstances involved in the present action are the same as those for which both parties were initially represented by the inquirer.

While the Committee assumes, as represented by the inquirer, that the inquirer never received any confidential information about the personal finances of former client B nor about the finances of the partnership, there is, at a minimum, an appearance of impropriety and, without complete disclosure to former client B and B's approval of the inquirer's representation of former client A, such representation should not be undertaken.

*Footnote: 1* [1]*It has become accepted to refer to this screening as the erection of a "Chinese Wall". See, Ross v. Canino, 93 N.J. 402, 410 (1983), and see discussion of "the Chinese Wall" in 94 Harv. L. Rev., at 1367.*

# Opinion 427

103 *N.J.L.J.* 513

May 31, 1979

**ADVISORY COMMITTEE ON PROFESSIONAL ETHICS**

**Appointed by the New Jersey Supreme Court**

**OPINION 427**

**Conflict of Interest Defending Motor Vehicle Defendant Then Suing Defendant Civilly**

An attorney was retained by the parents of a young woman who was involved in a two-car accident while driving a car owned by her mother to represent her in the municipal court on a charge of failure to yield in violation of *N.J.S.A.* 39:4-90. After consultation with the father and the daughter, it was decided that the daughter should appear on her own behalf in municipal court and plead not guilty. She did so, was convicted and fined and the fine was paid. The attorney was then asked by the father to appeal the conviction which he did. The appeal resulted in a finding of not guilty after a *de novo* hearing on the record in the county court. The attorney was then asked to instate an action to recover damages to the automobile. He advised the parents that the best course of action was to bring suit against both the driver of the other automobile and the daughter. The suit was started and is now pending. The attorney now wishes to know whether

he can properly continue to represent the mother-owner of the automobile in this proceeding. As of the date of his inquiry no other pleadings had been filed and no one has raised any question as to the propriety of his representation of the mother.

In our opinion this representation is improper. In his representation of the daughter on the appeal of the motor vehicle violation conviction, the attorney was obligated to use his best efforts to persuade the court that the daughter did not commit the violation with which she was charged. In his prosecution of the suit for damages against the daughter and the driver of the other car, the attorney will be obligated to take precisely the opposite position; namely that the daughter's negligence, an element of which would doubtless be the failure to yield, was a contributing factor to the accident. The proper administration of justice cannot tolerate a lawyer taking these diametrically opposite positions in the same matter. *See* ABA Comm. on Professional Ethics, Informal Decision C-753 (1964).

# Opinion 234

95 *N.J.L.J.* 253

March 23, 1972

**ADVISORY COMMITTEE ON PROFESSIONAL ETHICS**

**Appointed by the New Jersey Supreme Court**

OPINION 234

**Conflict of Interest Representing Codefendant of Former Client**

We are informed that A and B are codefendants in an indictment charging them with possession of stolen property and that their interests are adverse. Defendant B was previously represented by attorney Z "on a like, but in no way related, charge." The question for determination is whether attorney Z or his associate may, with propriety, now represent A.

We have explored the factors to be considered in determining whether an attorney should accept a retainer adverse to a former client in N.J. Advisory Committee on Professional Ethics, Opinions, 42, 87 *N.J.L.J.* 285 (1964); 97, 89 *N.J.L.J.* 507 (1966); 154, 92 *N.J.L.J.* 353 (1969); and 158, 92 *N.J.L.J.* 641 (1969). In Opinion 42 *supra*, we said:

A lawyer should never accept a retainer where his position may be adverse to that of a former client without taking extreme care to make certain that the new matter is one that will not be affected in any way by confidential information that he may have obtained in his former retainer.

Opinion 97, *supra*, considered an inquiry concerning the propriety of an attorney's representing the wife in a divorce proceeding against a man whom he had previously represented in a murder case. The attorney alleged that the interests of the former client were not adverse or hostile to the interests of the wife. We, nevertheless, came to the conclusion that the inquirer

should not undertake a divorce action for the wife of the attorney's previous client. In that opinion we said:
> The test is not whether the attorney has appeared for the party against whom he now appears, but whether his accepting the new retainer will require him in advancing the interests of his new client, to do anything which will injuriously affect his former client in any matter in which he formally represented him.

We have mentioned in many of our opinions that to maintain public confidence in the bar, it is necessary not only to avoid actual wrongdoing, but even the appearance of wrongdoing. In Opinion 154, *supra*, we decided it was not unethical for an attorney to undertake a negligence action against a former client whom he had represented in an unrelated matter, stating:

> However, it has been held elsewhere that a lawyer may bring a suit against a former client if the representation of the former client has been ended and the matter does not involve confidential communications. Drinker, *Legal Ethics* 112 (1953). The mere fact that the attorney had at an earlier time represented the adverse party does not, in itself, foreclose the attorney from undertaking the new matter.

In Opinion 158, *supra*, we concluded that the suit by an attorney against a former client was not improper because it was entirely unrelated to the prior representation of the client but we restated the guidelines to be considered before accepting a retainer adverse to a former client. We said:

> The impropriety of taking a case against a former client is not based solely on necessity for disclosure of confidential communication. If the former client has any reason to feel aggrieved, the necessity of maintaining proper public relations for the bar and of avoiding the appearance of wrongdoing should cause the attorney to refuse to accept employment in a capacity which is adverse to the interests of the former client.

Raymond L. Wise in his book on *Legal Ethics* summarizes the problem in the following language:
> If there is the slightest doubt as to whether or not the acceptance of professional employment will involve a conflict of interest between two clients or with a former client, or a conflict between the interests of any client and that of the attorney, or may require the use of information obtained through the service of another client, the employment should be refused. Wise, *Legal Ethics* 273 (2d ed. 1970).

*See also* A.B.A. Comm. on Professional Ethics and Grievances, Opinion 165 (1936).

In our opinion it would be unwise for attorney Z to undertake the representation of A unless he is convinced, beyond doubt, that the subject matter of the prior representation of B and the present pending charge against him are unrelated; that the prior representation of B will not adversely affect B's interests in the pending matter; that in representing A he will not be called upon to use any confidential information or secrets obtained in his former representation of B and that his former representation of B will not prevent him from representing A with undivided fidelity. All that we have said applies to any attorney associated with attorney Z.

# Opinion 356

99 *N.J.L.J.* 1065

December 2, 1976

**ADVISORY COMMITTEE ON PROFESSIONAL ETHIC**

Appointed by the New Jersey Supreme Court

OPINION 356

**Conflict of Interest – Consultation with Wife Precluding Representation of Husband**

A woman conferred with a member of the inquirer's firm concerning a possible matrimonial action. The inquiry does not make clear whether it was he or another member of the firm with whom she conferred. No notes or history were taken, no retainer was paid, no fees for the conference were charged.

The matrimonial action against the husband was instituted by the woman through other attorneys. Neither the inquirer's firm nor any member of it was involved in this action, either in the trial court, the ensuing appeal to the Appellate Division or in the trial on remand.

The husband now desires to retain the inquirer to represent him in writing the appellate brief on his appeal to the Appellate Division from the trial court's Judgment on remand. The wife objects to the representation "since she has consulted with the inquirer at one time, although she never retained him."

The inquirer asks whether he may properly represent the husband. We think not. A lawyer is required to decline proffered employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of such employment. DR 5-105(A). It makes no difference whether the husband now seeks to retain the attorney who was originally consulted by the wife or another member of the same firm. DR 5-105(D). A lawyer may not knowingly use a confidence of his client for the advantage of a third person, unless the client consents after full disclosure. DR 4-101(B)(3). Here, the wife has done more than withhold consent; she has expressly objected to the representation of the husband.

That the proposed retention of the inquirer is to write an appeal, based solely on the record and applicable law, does not mean, as the inquirer contends, that there is no possibility that the inquirer will improperly disclose or use the wife's confidences. The confidences reposed in the inquirer might lead him to emphasize in his argument some parts of the record which he would otherwise refrain from emphasizing or to minimize or ignore other parts of the record which he might otherwise stress. In the course of the appeal, the inquirer might characterize the wife or her behavior according to her demeanor observed or information gathered at the interview, even though we can safely assume that he would not directly mention the interview. Although the conflict here may seem somewhat tenuous, it is real and it is dispositive.

In *In re Blatt*, 42 *N.J.* 522, 524 (1964), the Court said:

> Where a member of the bar represents a litigant in a cause, he should not thereafter represent the opposing party in any step in the proceedings in or arising out of the same cause.

There is always a possibility, however remote, that confidential information received from the original client may be used to his detriment. Such conduct is plainly and patently unethical.

And in Opinion 86, 88 *N.J.L.J.* 773 (1966), which dealt with a situation analogous to that presented here, we said:

> The attorney seems to believe that because he was not retained, made no notes, and received no consultation fee, there would be nothing improper in later representing the other spouse. To this conclusion, we cannot agree. If, after being consulted, the obligation of an attorney to a prospective client under Canon 6, to avoid representing conflicting interests, or under Canon 37, to preserve his client's confidences, were limited to a case in which a retainer was accepted, and notes were made by the lawyer, every prospective client would be afraid to consult a lawyer for fear that he might later take the other side of the controversy.

*See* also Opinion 89, 89 *N.J.L.J.* 66 (1966).

Accordingly, we conclude that the inquirer and all members of his firm are precluded from writing an appeal for the husband.